FORDYCE et al. v. KANSAS CITY & N. CONNECTING R. CO. et al.

(Circuit Court, W. D. Missouri, W. D. April 16, 1906.)

No. 2,402.

1. RECEIVERS—ALLOWANCE OF CLAIMS—PRIORITIES—DIVERSION OF INCOME.

To entitle a creditor of an insolvent railroad company for supplies furnished to preference of payment over a prior mortgagee from the corpus of the property it must be shown that credit was given upon the faith of payment out of the net earnings of the company, and also that there was a diversion of such income to the benefit of the mortgagee.

2. RAILROADS—LIEN FOR DAMAGES TO ABUTTING PROPERTY—PRIORITY TO MORTGAGE.

Under Const. Mo. art. 2, § 21, which provides that private property shall not be taken or damaged for public use without just compensation, and that the fee of lands taken for railroad tracks without consent of the owner shall remain in such owner, claims for damages to abutting property resulting from the construction of a railroad stand on the same footing as those for a taking of property, and constitutes an equitable lien, which has priority over a mortgage of the road, and is entitled to preference in payment from the proceeds of the property when sold in foreclosure proceedings.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 570.]

In Equity. On exceptions to master's report.

Frank Hagerman, for purchasers.

S. W. Moore and F. H. Wood, for Kansas City S. Ry. Co.

Knott & Swinney and Brown & Dolman, for Baker and others.

PHILIPS, District Judge. In the memorandum opinion just handed down in Nos. 2401–2404 the court has discussed certain principles and rules of law which are applicable to some of the cases here to be reviewed on exceptions to the master's report, to which reference is made without here restating them.

### Claim of the Kansas City Southern Railway Company.

These claims are predicated of judgments of the receivers of the Gulf Company against the Northern Company. On the facts found by the

master, these claims must be rejected for two reasons: (1) It is not perceived as matter of fact that the credits were extended upon the faith of payments to be made out of the net earnings of the Northern Company; and (2) because there was no diversion of net income from the operation of the road applicable to the payment of the claims. Looking to substance rather than mere form, the judicial mind cannot be closed to the fact that in the scheme of the Gulf Railroad, what is known as the "Northern Connecting Roads" were secured for the mere purpose of exploitation of a system intended to extend from Port Arthur to Kansas City, and reach northwest to Omaha, and north and northeast in the direction of the Lakes and Chicago. The various short lines constituting the so-called "Northern Connection" or extension were well known to be independently nonsupporting. They were but the evidence of things not yet seen; the mere shadow of substance hoped for. From the inception of their acquisition they were but parasites, drawing their subsistence from the main trunk. The supplies for equipments, repairs, and operation furnished by the Gulf Company were essential, no doubt, to keep the branches of this northern adjunct going concerns, but they were the mere dependencies of the main line, never yielding income sufficient for their own maintenance. These facts were well known to the managers dominating and directing the affairs of the system in a scheme of promotion. As shown by the master, the charging of these supplies was not only largely a matter of mere bookkeeping, but they were done under the selection of the president of the Gulf Company. The charging of balances in transactions between the several branches and the main trunk, as ordered and directed by one dominating mind, were quite arbitrary, and were charged ad libitum; so that it is hardly possible, on the evidence submitted for the master, to have found what specific amount of supplies was actually chargeable to the Northern Company. Aside from this, however, the actual physical facts contradict any amount of asseveration, however vigorous, that it could have been in the contemplation of the manipulators of this enterprise in furnishing said supplies that the Gulf Company as such did so upon the faith or expectation of their being paid for out of the net earnings of the Northern Connecting lines. The underlying purpose and expectation unquestionably were that, upon the faith and credit of the main line, supplies of material and money could be furnished and raised to keep the Northern lines going concerns until at some time in the distant future the whole system might become self-supporting. The Northern Company never had any surplus income applicable to the payment of these supplies; and the master has found, and so the record warrants, the fact to be that there was no diversion of net income for the benefit of the mortgagee, which equity demands should be restored by it for the benefit of this creditor. Even conceding some betterments placed upon the Northern road, the deficit in net earnings was still great. These exceptions are therefore overruled.

Claim of Knott & Swinney, Receivers of Suburban Belt.

The court perceives nothing respecting the claims against the receivers of the Northern Company by the receivers of the Suburban

Belt Company to justify any discussion of the exceptions, and they are therefore overruled.

### Claims of Henry Baker, Middie Van Camp, Administratrix, George Briggs, Administrator, Elizabeth Nierman, and F. W. Moore.

As these claims arise practically out of the same state of facts, and depend upon the same questions of law, they will be considered together. In the construction of the Northern road through the town of Osborn, De Kalb county, Mo., it so changed the surface and grade of a street on which the claimants' real property abutted as to damage the same. It does not appear that the company ever took steps for the condemnation of this right of way. The master, after hearing the proofs and viewing the property, fixed the amount of damages sustained by each of these claimants. He disallowed the claims as not preferential, on the ground that they were for unliquidated damages, and further that there was no proof of diversion. In this ruling I am of opinion that the master fell into an error of law. The Constitution of this state (article 2, § 21) declares that:

"Private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed, or the proprietary rights of the owner therein devested. The fee of lands taken for railroad tracks without consent of the owner thereof shall remain in such owner, subject to the use for which it is taken."

Under this fundamental law, damage to property in making such public improvement is placed on the same footing as taking private property for public use. The law seems to be pretty well settled that such claims for damages are of the nature of a continuing equitable lien, from which the corporation can never escape until the claim be satisfied. Lewis on Eminent Domain (2d Ed.) § 621, vol. 2, says:

"No rights can be acquired in private property under the power of eminent domain except subject to the duty of making just compensation therefor. Consequently, the party originally taking or occupying the property cannot transfer to another, by mortgage, lease, or otherwise, any right in the property except subject to the same duty. In other words, the owner's claim for just compensation is paramount to any right which can be derived by or through the party making or seeking the condemnation. Different courts work out this result in different ways, but we believe all concur in reaching it in one way or another. * * * The foreclosure of a mortgage upon the property and franchises of the condemnor, to which the claimants for damages are not parties, cannot affect the rights of the latter. Sometimes such claimants are made parties, and their rights adjusted in the foreclosure proceedings, and the property sold clear of such claims. In such case the claims for land damages should be given preference to the mortgage debt in the distribution of the proceeds, and a decree to the contrary is error."

This view of the law was recognized in Central Trust Co. v. Bridges, 57 Fed. 753, 6 C. C. A. 539; Hobbs v. State Trust Co., 68 Fed. 618, 15 C. C. A. 604, and this view is evidently entertained by the Court of Appeals of this circuit from expressions in the recent case of Zimmerman, Administrator, v. K. C. N. W. Railroad Co., 144 Fed. 622. It has been expressly decided that a claim for damages like this to abut-

ting property falls within the same principle of protection. Lewis on Eminent Domain (section 622) says:

"It has been held that a claim for damages to abutting property by a railroad in a street has priority over a mortgage of the road and its franchises, and the owner may enjoin the operation of the road until such damages are paid. There would seem to be no reason why the abutter should not have the same remedies against those claiming under the first company as against the first company itself, even to the matter of a personal action."

This view is ably supported by the opinion of Judge Acheson in Mercantile Trust Co. v. Pittsburgh & W. R. Co. (C. C.) 29 Fed. 732.

It must result that the exceptions in these cases to the master's report should be allowed, and the respective amounts of damages found by the master are allowed as preferential claims, but without interest. Thomas v. Western Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663.