ARKANSAS-LOUISIANA HIGHWAY IMPROVEMENT DISTRICT *v.* PICKENS.

Opinion delivered October 26, 1925.

1. HIGHWAYS—NATURE OF IMPROVEMENT DISTRICT.—The various tracts of land in a road improvement district do not constitute independent units of the district, which is an entity created as a governmental agency for the purpose of carrying out the supposed will of the property owners.

2. HIGHWAYS—UNITY OF IMPROVEMENT DISTRICT.—While each tract in a road improvement district is separately taxed on the basis

of the assessed benefits to pay for the improvement, the whole of the area constitutes a single corporate entity for the purpose of constructing the improvement and raising revenue to pay for same.

3. HIGHWAYS—IMPROVEMENT DISTRICT—LIEN OF INDEBTEDNESS.—Any indebtedness of a road improvement district incurred in constructing such improvement constitutes a charge upon the revenues of the whole district, and not upon the separate tracts of land.

4. HIGHWAYS—IMPROVEMENT DISTRICT—FORECLOSURE SALES.—The commissioners of a road improvement district are representatives, not of the bondholders, but of the district in foreclosure proceedings to enforce the lien of assessments levied upon lands within the district; and when lands are purchased by the district at delinquent foreclosure sales and such sales are confirmed, they become the property of the district and not of the bondholders, and their total value is thereafter subject to sale to raise revenue.

5. HIGHWAYS—IMPROVEMENT DISTRICTS—INCREASE OF ANNUAL INSTALLMENTS.—Where the annual installments of taxes originally levied by a road improvement district are insufficient to meet the interest and bonds falling due, the commissioners of the district are authorized to increase such installments up to the limit of the total assessed benefits.

6. HIGHWAYS—IMPROVEMENT DISTRICTS—NOTICE OF INCREASE OF INSTALLMENTS.—There is no constitutional requirement, either express or implied, that notice shall be given to the property owners in an improvement district of the fixing at any time of the amount of the annual installments to be charged against the lands of the district; the requirement of notice having been complied with by the giving of notice and an opportunity to be heard upon the question of the amount of the total assessed benefits.

Appeal from Desha Chancery Court; *E. G. Hammock,* Chancellor; reversed.

*Ed Trice* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*J. G. Williamson, Adrian Williamson* and *Lamar Williamson,* for appellee.

McCULLOCH, C. J.  Arkansas-Louisiana Highway Improvement District was organized by special statute (Act No. 265, Session of 1917) for the purpose of improving a group or unit of roads situated in the counties of Ashley, Chicot, Desha, Drew and Lincoln.  Pursuant to

statutory authority thus conferred, public roads were improved and hard-surfaced to the extent of 154 miles, which were completed in the year 1922. Serial bonds running from the year 1921 to 1939, inclusive, were issued by the district, aggregating $2,800,000. The benefits to real property in the district were assessed aggregating $6,315,697.45, and taxes thereon were levied in twenty-one installments for the years 1919 to 1939, inclusive. The first two annual installments (1919 and 1920) were fixed at three per centum of the assessed benefits, and for the other nineteen years the annual installments were fixed at four and four-tenths per centum. These annual installments thus aggregated 89.6 per centum of the total assessed benefits.

On July 10, 1925, the commissioners of the district adopted a resolution increasing the annual levy of taxes, beginning with the year 1926 and continuing up to the end of the whole period, to five per centum of the assessed benefits, instead of four and four-tenths per centum, as originally levied. This increased the total amount of the annual installments to ninety-eight per centum of the assessed benefits. It appears from the agreed statement of facts on which the case was heard below that the adoption of this resolution changing the annual assessments was prompted by the fact that there was a shortage in the revenues of the district for the year 1925, which caused a deficit of $29,000 on the matured bonds, and that this deficit was caused by the fact that for past years there were delinquencies in payments by property owners to the extent of about $125,000. It was shown that there were foreclosures on the tracts of land involved in these delinquencies, and that the lands were bought in by the district. As to some of the tracts, the statutory period of redemption from sale has expired, and in others the right of redemption is still pending.

The four appellees are owners of real property in the district, and they instituted this action to restrain the commissioners from enforcing the attempted increase of

annual installments of taxes. The chancellor granted the relief prayed for, and the district has appealed.

The theory of learned counsel for appellees, which was adopted by the chancellor, is that the district consists of independent units of land upon each of which the bondholders, as creditors, have separate and independent liens; that the commissioners of the district in prosecuting the foreclosure proceedings to enforce the collection of taxes were representatives, not of the district, but of the bondholders, and that the delinquent lands when purchased by the commissioners become the property of the bondholders; that the district is entitled to a credit on the outstanding bonds to the extent of the assessed benefits on the foreclosed lands purchased by the commissioners for the bondholders, and that the uniformity of the taxation is destroyed if an increase be allowed on annual installments. We are of the opinion that the whole of this theory is unsound. In the first place, the tracts of land in the district did not constitute independent units of the district. The district is an entire entity, created as a governmental agency for the purpose of carrying out the supposed will of the owners of property. *Fitzgerald* v. *Walker*, 55 Ark. 148; *Altheimer* v. *Board of Directors of Plum Bayou Levee District*, 79 Ark. 229. It is true that each tract of land is separately taxed to pay for the improvement, the taxes being levied upon assessed benefits, but the whole of the area constitutes a single corporate entity for the purpose of constructing the improvements and raising revenues with which to pay for the same. The indebtedness incurred for that purpose is not a separate charge upon each tract of land, but is an indebtedness of the whole district, to be paid out of revenues raised by uniform levies of taxation on assessed benefits. The fact that the indebtedness in this instance consists of negotiable bonds, for the payment of which priority is given by a lien on the revenues of the district, is not material. The result would be the same if it were open indebtedness that was involved, for

any indebtedness of the district, legally incurred, is a charge upon the revenues of the whole district and not upon the separate tracts of land.

The commissioners of the district are not in any sense or for any purpose the representatives of the bondholders; they represent the district in any foreclosure proceedings as well as in all other transactions. The foreclosures are not made by or for the bondholders or other creditors, though done for their benefit and for the purpose of discharging the obligations of the district to them. Their lien or priority is upon the revenues of the district and not against the lands themselves. When the lands are bought in by the commissioners at the foreclosure sales, they become the property of the district, to be used for the purpose of raising revenues to pay the bonds. The lands do not belong to the bondholders, and the district is not entitled to take credit, as contended by counsel for appellees, to any extent until revenues are raised by the sale thereof. The lands thus purchased become the absolute property of the district, and express authority is conferred by the statute to sell the lands at prices fixed by the commissioners. The theory is, and the practice should be, in order to comply with the spirit of the scheme, for the commissioners in selling the land to secure a sufficient price at least to cover the expenses and all of the delinquent assessments up to the time of the resale, so that the lands will bear their full share of the burden of the expense of the improvement. Nor is there any dislocation or destruction of the scheme of uniformity by reason of the purchase by the district of delinquent lands. By the purchase of the lands at foreclosure sale, when the sales are confirmed, the district becomes the absolute owner of the lands, which renders, not only the estimated benefits, but the total value of the lands subject to sale to raise revenues. It would be a contradiction of terms to say that the foreclosed lands escape their just proportion of the burden by becoming the property of the district, when, as a matter of fact,

by this change in the title the lands become wholly subject to these burdens.

The requirement of uniformity is fully met in the assessment of benefits and the methods of enforcing the same, and the fact that some of the lands, by delinquency of the owners, may become the property of the district under foreclosure proceedings does not, as we have already seen, disturb the uniformity of the scheme. If it were otherwise, it would be impossible to comply with the requirement of uniformity, for foreclosure of the tax lien and purchase by the district in the absence of other purchasers is the only method whereby the burden of taxation can be successfully enforced.

The theory of counsel for appellees is unsound, though it finds support in other States where systems different from ours in constructing local improvements at the expense of property owners are in vogue. The theory has no place under our scheme, which provides, as we have already said, for the creation of a corporate entity for the purpose of constructing the improvement, and levying taxes to pay for the same.

Having reached this conclusion, it follows that the commissioners of the district were acting within their statutory authority when they adopted the resolution increasing the annual installments. Section 17 of the statute expressly authorizes it. The legality of that authority is upheld by the decision of this court in *Griffin* v. *Little Red River Levee District*, 157 Ark. 590. That decision related to assessments in levee and drainage districts formed under general statutes, but the authority conferred was the same. Of course, the annual installments of taxes cannot be raised so as in the aggregate to exceed the total benefits, but, as we have already seen, this increase does not reach the full limit of the benefits.

It is also contended by counsel for appellees that the decree enjoining the enforcement of the resolution increasing the installments should be sustained for the reason that no notice was given of the resolution and

that none is required by the statute. The answer to this contention is that there is no constitutional requirement, either express or implied, that notice shall be given of the fixing, at any time, of the amount of annual installments. All of the constitutional requirements are complied with in notice and an opportunity to be heard on the question of the amount of the assessments of benefits, which is the basis of the annual installments. The law itself imposes upon the real property in the district the total cost of the improvement, not exceeding the assessed benefits, and it was within the power of the Legislature to authorize the commissioners to change the annual installments according to the necessities in raising revenue.

Appellees cross-appeal on the ground that the court denied them other relief prayed for in their complaint, namely, that there be an accounting and a master be appointed for that purpose. We think the allegations of the complaint were not sufficient to justify relief on that score. The statute requires the commissioners to make annual reports of receipts and expenditures, and that the same be filed in the office of the clerk. This affords opportunity for public examination, and there is no allegation of fraud or suppression of accounts.

Our conclusion therefore is that the decree of the chancellor enjoining the commissioners from raising the annual installments was erroneous, so the decree is reversed, and the cause remanded with directions to dismiss the complaint of appellees for want of equity.