KEITH *v.* DRAINAGE DISTRICT No. 7 OF POINSETT COUNTY.

Opinion delivered May 11, 1931.

*C. T. Carpenter,* for petitioner.

*C. D. Frierson,* for respondent.

HART, C. J. This is an original application for a writ of mandamus by Harry A. Keith and Mamie Keith against A. H. Landers, sheriff of Poinsett County, Arkan-

sas, to compel him to levy an execution on certain real and personal property to satisfy a judgment rendered in this court in favor of petitioners against Drainage District No. 7 of Poinsett County in the sum of $3,200, with interest and costs.

The judgment was obtained under the provisions of § 22 of the Bill of Rights of our present Constitution, which provides that private property shall not be taken or damaged for public use without just compensation therefor. In the construction of this provision of the Constitution, this court has frequently held that the public, like a private person, must so use its own as not to injure another's property, and that any injury to the property of an individual which deprives him of the ordinary use of it, falls under the protection of the constitutional provision and entitles the property owner to compensation. *Keith* v. *Drainage District No. 7 of Poinsett County, ante* p. 384.

After the judgment had become final, upon the request of Keith, the clerk of this court issued an execution directed to the sheriff of Poinsett County, Arkansas, in which the drainage district was organized. Keith directed the sheriff to levy the execution upon certain personal property belonging to said drainage district, which consisted of a cabin boat, three motor boats, a Ford truck, a Ford coupe, a pile driver, and two drag lines, and certain office furniture, and also upon certain town lots belonging to said district. The sheriff refused to levy the execution on the ground that he had been informed that the property was exempt from execution under our statutes and laws.

All agree that, when the judgment of this court became final, it was the legal duty of the district to pay the judgment, but it is earnestly insisted by counsel for the sheriff and for the district that the only remedy available to collect the judgment was by a writ of mandamus to compel the drainage commissioners to levy an additional tax with which to pay the judgment. It is not to be

questioned but that this would be an appropriate remedy, but it is as little to be questioned that the Keiths, as judgment creditors, might by any appropriate method compel the payment of their judgment. This brings us to a consideration of the single proposition, whether or not an execution, levy, and sale of certain personal and real property of the district is a lawful method for the collection of the debt.

It is first insisted that the property is not subject to execution under the provisions of § 4274 of Crawford & Moses' Digest. The section provides that no property, real or personal, belonging to the State, or any county, city, town, borough or other public or municipal corporation, regularly incorporated according to law, shall be levied upon or sold by virtue of any execution.

In the opinion of a majority of the court, this section does not exempt the property from levy and sale under the execution in this case. The drainage district was organized under the laws of this State for the purpose of draining and leveeing the lands within the limits of the district. The district was not in any sense a county, city, town, or other public or municipal corporation within the meaning of the statute just referred to. The powers of the drainage district are derived directly from the Legislature; and, in exercising them, the board of commissioners of the district acts as the agent of the property owners whose interests are affected by the duties it performs. *Fitzgerald* v. *Walker,* 55 Ark. 143, 17 S. W. 702; and *Lewis* v. *Rieff,* 114 Ark. 366, 169 S. W. 1184.

The statute was directed to counties and municipal corporations which are local agencies of the State creating them, and they exercise such governmental powers as are conferred by statute. Their property necessary for the exercise of the powers conferred become part of the machinery of government, and to permit a creditor to seize and sell it to collect his debt would be to permit him in some degree to destroy the government itself. *Klein* v. *New Orleans,* 99 U. S. 149.

It is next insisted that the property belonging to an improvement district is devoted to public use and comes within the general rule that the property of a county, municipal corporation, or other corporation holding it for use for public purposes is not subject to sale under execution. This is a correct rule, when properly applied, but has no bearing on the issues herein presented. Under § 4270 of the Digest, in general, the real and personal property of a defendant under an execution upon any judgment may be levied upon and sold in satisfaction of the judgment. Under § 4287, if an officer who is required to levy an execution upon personal property, doubts whether it is subject to execution, he may give to the plaintiff therein notice that an indemnifying bond is required. In the case at bar, the notice required by this section of the statute was given by the sheriff to the plaintiff in the execution. The sheriff notified the plaintiff that he had been informed that the personal property was devoted to the public use for which the district had been organized. The truth of this depended upon the facts as they really existed; and it cannot be said, when the description of the property is considered, that the sheriff acted arbitrarily in refusing to levy the execution on the personal property without the indemnifying bond required by the statute. Hence no writ of mandamus should be awarded against him under the facts presented to require him to levy upon the personal property. *Mayfield Woolen Mills* v. *Lewis*, 89 Ark. 488, 117 S. W. 558, 16 Ann. Cas. 1041.

A different question, however, is presented as to the real estate. No indemnifying bond can be required under our statute before levying upon land. Crawford & Moses' Dig., § 4287, and *Smith* v. *Spradlin*, 136 Ark. 204, 206 S. W. 327. The record before us shows that the lands upon which the sheriff was required to levy the execution had been acquired by the drainage district in the foreclosure of drainage assessments upon lands situated in the district and subject to the lien thereof. It cannot be said

that such property is necessary to the exercise of the *quasi*-public functions which the drainage district was organized to carry out, and that it is necessarily protected from levy and sale by virtue of being owned by the drainage district. As we have already seen, after the compensation provided by our Constitution in favor of the owner of the land damaged became fixed by the judgment rendered in his favor against the drainage district, he had a vested right to such compensation, and payment might be enforced according to the statutes and laws of the State. Even if it should be held that all property of every kind belonging to the drainage district is presumptively for public use, this presumption is one of fact and may be overcome on proof that the district is holding it for other purposes, and that it is not needed or intended for use in carrying on the purposes for which the district was organized. In a case like this, if the property should be sold under execution and purchased by third persons, it would again become subject to the drainage and levee taxes just as other lands located within the district.

We do not think the case of *Fordyce* v. *Woman's Christian National Library Association*, 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N. S.) 485, applies. There the trust expressly limited the property to the use of the Library Association as a site for the building, and it could not be devoted to any other purpose. Under the express terms of the trust the property could not be sold by the trustees nor under execution sale without doing direct violation of the terms of the trust:

To carry the contention of the sheriff and of the drainage district to its last analysis, although the property required to be levied on was not needed and was not intended to be used for the purposes for which the district was organized, still it could not be sold in satisfaction of a judgment of a property owner whose property had been damaged for public use without a just equivalent being paid.

If the land claimed or owned by the drainage district is not necessary to its operation, the sheriff should be directed to sell it. Neither he nor the drainage district will be permitted to say that such accumulation of real estate, not used nor necessary for carrying out the public functions for which the drainage district was organized, may be made when that course may render inoperative the constitutional guaranty to the landowner for compensation for destruction or diminution of the value of his property. To illustrate, if land had been condemned for use as a right-of-way for the drainage or levee district, and such use should at any time be no longer required, then the land would revert to its original owner and could not be levied upon for the satisfaction of a judgment against the improvement district. Neither could a levy or sale of land used for right-of-way or other necessary public use be had while it was being actually devoted to that purpose. In the case at bar, however, this would be a question of fact which may, by a court of competent jurisdiction, be the subject-matter of inquiry and adjudged accordingly. In the opinion of the majority, lands acquired by the district at a sale for the enforcement of drainage and levee assessments and held by the district for resale, as provided by the statute, may be levied upon and sold in satisfaction of a debt of a judgment creditor.

The result of the views of the majority is that a writ of mandamus should not be directed to the sheriff to levy and sell upon execution the personal property involved in this proceeding; but the sheriff will be directed to levy upon and sell the real estate involved in this proceeding unless his right is assailed and determined adversely to him in a court of competent jurisdiction according to the principles of law announced and set out herein. Of course, the rights of third persons who may have claims to the property involved herein are not affected by this decision. It is so ordered.

SMITH, J., (dissenting). The sheriff was requested by the plaintiff, a judgment creditor of the defendant

drainage district, to levy an execution on certain personal property of the district, and also upon certain real estate to which the district had acquired title by the sale of the lands to it for the nonpayment of the improvement district taxes due and delinquent thereon. The majority hold that the lands of the district may be levied upon and sold, except the right-of-way, but that, as the personal property may or may not be exempt, the sheriff did not act arbitrarily in demanding an indemnifying bond before levying upon it. This holding, in my view of the law, demonstrates the error into which the majority have fallen in holding that any part of the plaintiff's judgment may be collected through an ordinary execution at law.

If any of the district's property may be sold under an execution, all of it may be. No proper distinction may be made between the right to sell the personal property and the real estate.

The majority hold, in effect, that the personal property is exempt from a sale under execution if the use of that property is necessary to the operation of the district's affairs and the discharge of its functions as such. But, if so, why?

By § 4274, Crawford & Moses' Digest it is provided that no property, real or personal, belonging to the State, or any county, city, town, borough or other public or municipal corporation shall be levied upon or sold by virtue of any execution.

Unless the drainage district is a corporation within the meaning of this section, its personal property, however indispensable to its business, is not exempt, and, if it is exempt, this is true only because it is such a corporation. But, if it is such a corporation, all of its property, both real and personal, is exempt from seizure and sale under an execution. It therefore appears illogical to say that the drainage district's real estate may be sold, but not its personal property, for if one class of

property is exempt from sale under execution, the other is also exempt.

The statute to which I have referred declares the public policy of the State to be that the administration of the affairs of a governmental agency shall not be disturbed by the levy of an execution upon its property. Such an agency is not exempt from the enforcement of payment of its debts and obligations, but this enforcement must be accomplished by other means than a sale of the agency's property under an execution. A receivership might be had, or the board of directors might be compelled by a mandamus to levy a larger per cent. of the betterments to be collected. *Faulkner Lake Drainage Dist.* v. *Williams*, 169 Ark. 592, 276 S. W. 604.

At § 105 of the chapter on Executions, 23 C. J. p. 355, the law is stated to be that whether the property of a municipal or other public corporation is subject to execution to satisfy judgments recovered against them is to be determined by the usage and purposes for which the property is held, and that property held for public uses is not subject to levy and sale under execution against such corporations, and that the rule also applies to funds in the hands of a public officer, and that taxes due to such corporations cannot be seized under execution by a creditor. An apparent exception to the rule is stated to be that, where a corporation owns in its proprietary, as distinguished from its public or governmental capacity, property not useful or used for a public purpose but for *quasi* private purposes may be seized and sold under execution, precisely as similar property of individuals may be seized and sold, but that the question whether property held as public property is necessary for the public use is a political, rather than a judicial, question. The notes to this text cite numerous cases, a number of these being annotated cases which fully support the text.

In the response of the drainage district it is made to appear that the personal property upon which the sheriff is asked to levy the execution, while of small value, is

indispensable to the district. The drainage district in question is probably the largest in the State, and embraces practically half of Poinsett County, and has issued about five million dollars in bonds. The sheriff is asked to levy upon the office furniture of the district, which is not expensive and would bring only a nominal sum if sold at public sale, yet this furniture is shown to be necessary to protect the valuable records of the district and is indispensable to its officers in the performance of their duties. As a part of the plan to control the flood waters of the St. Francis River, which runs through the district, locks were constructed, and are maintained, and certain tools which the sheriff is asked to levy upon are shown to be necessary for the operation and maintenance of the locks, which were installed under the authority of the War Department of the United States Government, and if the district is deprived of these simple, but essential, tools, the locks may not be operated and the navigability of the river will be interfered with and the most serious complications will arise. It is shown also that other personal property upon which the sheriff is asked to levy the execution is also indispensable to the proper functioning of the district.

In Sloan's Improvement Districts in Arkansas it is said, at § 17 of this excellent work, that improvement districts, whether municipal or non-municipal, are usually regarded as public *quasi* corporations, and at § 28 of the same work it is said that public policy forbids that the funds of public corporations or agencies should be diverted by garnishment from the purposes for which they were collected.

In the case of *Goyer Co.* v. *Williamson,* 107 Ark. 189, 154 S. W. 525, it was said: "The levee board was one created for public purposes and given certain powers and required to perform certain duties for the public good and was an agency for the government in fact for such purposes, and, as such, was not subject to garnishment at law. Upon the transfer of the suit to equity,

however, the allegations of the insolvency of the contractors and that appellee was without remedy at law, he could have subjected the funds in the hands of the levee board due the contractors to the payment of his debt within the doctrine heretofore announced in *Plummer v. School District,* 90 Ark. 236, 118 S. W. 1011.'' The doctrine of that case was reaffirmed in the cases of *Sallee v. Bank of Corning,* 134 Ark. 115, 203 S. W. 276, and *Bayou Meto Drainage Dist.* v. *Chapline,* 143 Ark. 453, 220 S. W. 807.

The same public policy which inhibits the seizure of funds of an improvement district under garnishment would appear to inhibit their seizure under an execution at law.

The lands of the district are funds of the district in legal effect. The district acquired these lands through the sale thereof to it for the nonpayment of the taxes due on the lands. They therefore represent taxes due the district.

In the case of *Chicago Mill & Lbr. Co.* v. *Drainage Dist. No. 17,* 172 Ark. 1059, 291 S. W. 810, the delinquency in tax payments were so great that it became necessary to levy a larger per cent. of the assessed betterments to enable the district to meet its maturing obligations of bonds and interest thereon, and certain taxpayers who were not delinquent resisted this action upon the ground that it constituted a discrimination against them, in that they were thereby required to pay an undue proportion of their assessed betterments. But in refusing to sustain that contention we said: ''The contention of appellant, expressed in its second request, that the levy of the proposed rate would result in requiring it and other landowners who had paid and who continued to pay their taxes to bear a greater proportionate burden than that imposed upon the lands which were allowed to go delinquent, is answered in the Rowland case, *supra,* [170 Ark. 1168, 282 S. W. 990] and in that of *Arkansas-Louisiana Highway Imp. Dist.* v.

*Pickens,* 169 Ark. 603, 276 S. W. 355. It was pointed out in those cases that the lien of the district continued until the taxes were paid or until the lands themselves were acquired by the district through sales for the nonpayment of the taxes, and that, when the delinquent taxes were paid, they became available and should be used in paying the obligations of the district, and further that, if the lands were sold to the district and not redeemed, then the entire value of the lands to be realized by a sale thereof would be available for this purpose. So that, while a delay would be entailed in obtaining and applying revenues from the delinquent lands, these revenues would finally be obtained and applied, and thus no unequal burden would be imposed.''

It would hardly be contended that taxes collected from lands in the district on deposit in the bank to the credit of the district could be levied upon by any process from a court of law. Yet in legal effect this is the character of the lands upon which the judgment creditor here seeks to have an execution levied. These lands represent taxes not yet converted into money, but the authority to so convert them by selling them exists and is imposed upon the directors of the drainage district by the Acts of the General Assembly under which the district is performing the functions for which it was created.

The taxes of the district, which are represented, in part, by the lands sold for the nonpayment of taxes, have been pledged to the holders of the bonds of the district, and the judgment creditor in the instant case should not, by this proceeding, be given this preference over the holders of these obligations of the district. *Kochtitzky* v. *Mercantile Trust Co.,* 16 Fed. (2d) 227; *Canal Const. Co.* v. *Federal Life Ins. Co.,* 21 Fed. (2d) 928.

The execution should not therefore be awarded, and I respectfully dissent from the judgment ordering it done.