OLIVER *v.* GANN.

Opinion delivered June 8, 1931.

N. F. *Lamb*, for appellant.

*Arthur L. Adams, John W. Gann, Jr.* and *A. P. Patton*, for appellee.

KIRBY, J. The questions raised for determination by this appeal are, whether drainage districts may sell lands forfeited to or acquired by them upon the sale thereof for the collection of taxes for an amount less than would have been required paid by the owner to redeem the lands from such forfeiture and sale; and also the effect of the failure of the clerk to file a certified list of lands included in a commissioner's report of sale as provided in act 445 of 1923, p. 395.

These ejectments were consolidated for trial, plaintiff claiming title to the Wicker lands, under deed from Drainage District No. 7 of Poinsett County, under date of November 29, 1929, and under a deed from Road Improvement District No. 5 of Poinsett County, dated December 22, 1929.

The answer in the Wicker case alleged there had been no compliance with act 445 of 1923, page 395, by District No. 7, and that the consideration expressed in its deed is less than the tax, penalty, cost and interest due on the several tracts of lands forfeited and conveyed.

The same denial and allegations were pleaded in bar of the deed from the Road Improvement District No. 5 conveying the lands.

It was stipulated that, except for the foreclosure sales for delinquent assessments and conveyances by the improvement districts, Gann was the owner of the southeast quarter, section 23, township 11 north, range 4 east; and that an insurance company had a mortgage on the land which became delinquent for drainage taxes for 1926 and foreclosure proceedings were instituted, decree rendered and the lands sold by the commissioners to the district on April 30, 1927, sale was reported on May 3, 1927, and on that date a deed executed by the commissioner of District No. 7. Similar proceedings were had by the district for assessments owing for 1927 and that the district's deed of November 2, 1929, to plaintiff, recited a consideration of $10 per acre and other consideration paid, but for an actual consideration of $5 per acre,

and the assumption by the grantee of all future drainage taxes in said district against said lands. The amount of delinquent taxes due Drainage District No. 7, at the time the deed was executed by the district to appellant, was $1,334.38. That on December 2, 1929, Gann redeemed said lands for the 1927-28-29 levee district taxes by paying the sum of $307.71, the total amount due.

The stipulation also shows that Oliver purchased from the drainage district the land included in the Gann case for an actual consideration of $5 per acre and the assumption by him of the future maturing installments of drainage taxes in said district against said lands, and further that, when the deed to Oliver was executed the amount of delinquent taxes in said district against said lands amounted to $1,334.38, a sum considerably in excess of the actual consideration paid by him. It shows also that the consideration paid by Oliver for the Wicker lands was $5 per acre and the assumption of all future installments, the amount of delinquent taxes on these lands at the time of the execution of the deed to Oliver was $359, a sum $159 in excess of the sale price to Oliver. The market value of the lands at the time of the conveyances by the improvement districts to Oliver was not less than $25 per acre.

Appellant relies upon the case of *Arkansas-Louisiana Highway Improvement Dist.* v. *Pickens,* 169 Ark. 603, 276 S. W. 355. In this case in which lands were purchased by a road improvement district at the sale for assessments due, the court said: "When the lands are bought in by the commissioners at the foreclosure sales, they become the property of the district, to be used for the purpose of raising revenues to pay the bonds. The lands do not belong to the bondholders, and the district is not entitled to take credit, as contended by counsel for appellees, to any extent until revenues are raised by the sale thereof. The lands thus purchased become the absolute property of the district, and express authority is conferred by the statute to sell the lands at prices fixed

by the commissioners. The theory is, and the practice should be, in order to comply with the spirit of the scheme, for the commissioners in selling the land to secure a sufficient price at least to cover the expenses and all of the delinquent assessments up to the time of the resale, so that the lands will bear their full share of the expense of the improvement.'' See also *Meyer* v. *Rolfe*, 71 Ark. 215, 72 S. W. 52; *Vietz* v. *Road Imp. Dist.*, 139 Ark. 567, 214 S. W. 50; *Crowe* v. *Security Mortgage Co.*, 176 Ark. 1130, 5 S. W. (2d) 346. In the last case, where it was held the district had the right to assign the certificate of purchase, the court said:

"So therefore it must follow that the improvement district had the right to assign certificates of purchase for lands sold it for a sum not less than the taxes, penalty, interest and costs for which the lands were sold.''

Oliver agreed to pay all future assessments upon the lands at the time of the purchase thereof, and the payment of the consideration therefor, which was in fact a less amount than would have been required to redeem the lands from the sale under the law allowing the owner the right of redemption, but the lands had been acquired by the district under a sale properly made, and it had the right to dispose thereof for a less amount than would have been required for redemption by the owner in order to get them back into private ownership where they were still subject to the payment of all the other assessments of benefits of the improvement district.

It may be said that, even though all future assessments were promptly paid, the district would necessarily lose by such sale the difference between the amount paid in cash by the purchaser and the amount it would have required to be paid for redemption by the owner, and, even though this be a fact, it is also true that the lands were shown to have been worth at least $25 per acre, and the district could have conveyed the entire title, subject to the payment of the remaining assessments, and might have received more than the whole amount necessary to

redeem and to pay all future assessments, and there is no indication or intimation in the testimony that the loss, the negligible amount of the difference between the sale price or the consideration received and the amount that would have been required for the redemption of the lands by the owner, could or would appreciably affect the security of the lands of the district for payment of the bonds issued.

It was not necessary to resort to a sale under the provisions of the statute (§ 3646, Crawford & Moses' Digest) before the lands were sold to the district in payment of the taxes due thereon, since they were necessarily sold subject to the lien of all improvement district assessments existing against them at the time of the sale and could not have been sold under said statute free of any such liens, except for the amount of taxes already due. *Board of Comrs. of McKinney Bayou Dist.* v. *Directors Garland Levee Dist.*, 181 Ark. 899, 28 S. W. (2d) 721.

It has also been held that, if the lands are acquired at foreclosure sales for delinquent taxes by the improvement district, they cannot be sold again by the district for other taxes accruing (*Crowe* v. *Security Mortgage Co., supra*); and would thus be left in the district unavailable for realization of other assessments thereafter becoming due to the district, unless and until they could first be sold and disposed of for at least the amount required paid by the owner to redeem the lands from the sale thereof.

Neither did the failure of the clerk to file the certified list of lands included in the commissioner's report of sale of lands in the improvement district as required in act 445 of 1923, p. 395, render the tax sale, otherwise regular and properly made, invalid. It would be singular indeed if a sale regularly made by the agencies provided therefor under a decree of the chancery court, duly reported and confirmed, with the commissioner's deed thereafter approved, could be held invalid because the

clerk failed to certify it among the list of lands sold by the commissioner in accordance with the said act, which provides a penalty for his failure to do so. Certainly a ministerial officer's failure to comply with this provision of the statute, for violation of which a penalty is prescribed against the officer, could not have the effect to invalidate a judicial sale and conveyance of lands by the commissioner of the chancery court regularly approved by the court. The construction of the act in *Crowe* v. *Security Mortgage Co.*, 176 Ark. 130, 5 S. W. (2d) 346, and *Wyatt* v. *Beard*, 179 Ark. 305, 15 S. W. (2d) 990, is not in conflict with this holding.

Reversed.