## GUARDIAN TRUST CO. et al. v. KEITH et al.
### No. 9636.

Circuit Court of Appeals, Eighth Circuit.
Feb. 16, 1934.
Rehearing Denied March 24, 1934.

John F. Rhodes, of Kansas City, Mo., and Archer Wheatley, of Jonesboro, Ark. (J.

H. Hawthorne, of Jonesboro, Ark., and Justin D. Bowersock and Robert B. Fizzell, both of Kansas City, Mo., on the brief), for appellants.

C. T. Carpenter, of Marked Tree, Ark., for appellees.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.

The trustees for various bond issues put out by drainage district No. 7 of Poinsett county, Ark., brought this action against the directors of the district, the sheriff of the county, Harry A. Keith, and Mamie Keith. The Keiths had procured a judgment by the state Supreme Court [183 Ark. 384, 36 S.W. (2d) 59] allowing them damages of $3,200, and interest, for the damage arising from overflow of 320 acres of land caused by the improvements made by the district. To procure satisfaction of that judgment, they had secured two writs of mandamus from the state Supreme Court. One of these writs required the sheriff to levy on certain personal and real property belonging to the district and sell the same in satisfaction for judgment. 183 Ark. 786, 38 S.W.(2d) 755. The second and later writ required the commissioners of the district to pay the judgment out of the revenues of the district. 185 Ark. 553, 48. S.W.(2d) 236. Alleging that they had a prior lien upon all of the properties and revenues of the district for the payment of the bonds, the trustees brought this action to restrain the collections required by the two mandamus writs. The case was heard upon its merits and the complaint dismissed. From that decree this appeal is brought.

Appellants seek to present here four matters, as follows: I. That the Keiths failed to follow the statutory remedy for ascertaining damages prescribed by the act incorporating the district (Laws Ark. 1917, p. 1053), and therefore cannot recover from the district until all of the bonds have been paid in full. II. That the Keiths have been guilty of laches in permitting millions to be spent in the construction of the improvements of the district without in any wise asserting a claim on account of damages. III. That the lien of the bondholders is prior and superior to that of the judgment. IV. That the judgment of the Poinsett county court in connection with the various issues of the bonds is res adjudicata of the rights of the parties concerning priority as to the proceeds of collection of assessments of benefits.

In the beginning we are faced with a challenge by appellees of the sufficiency of the assignments of error to present any except the third above point. The assignments of error are exceedingly general. It seems to us that only one of them presents a reviewable point with sufficient distinctness and clearness to require determination here. That assignment is the fourth, which raises the matter of priority of the bonds over the judgment. If this view of the assignments is correct, it eliminates from our consideration two of the points presented by appellants. Those are points I and IV above. This leaves for our consideration the two points of whether the bonds are prior to the judgment and whether the Keiths are guilty of laches in asserting their rights.

## I. Priority.

As to priority, we think the judgment should be regarded as prior to the bonds. The situation presented here is of a drainage district which has permanently damaged property by its improvements, and for which no payment has been made, and where it has issued bonds supported by a pledge of all the property and revenues of the district. The Constitution of Arkansas (article 2, § 22) provides: "The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor." The Supreme Court of that state construes the requirement of the above provision to be that no incumbrance or transfer of the property by the condemnor will free it from the first right to this compensation. Keith v. Drainage District No. 7, Poinsett County, 185 Ark. 553, 48 S.W.(2d) 236; Organ v. M. & L. R. Ry. Co., 51 Ark. 235, 11 S. W. 96. The Keith Case, just cited, is the second mandamus proceeding involved here. While it is not binding, as an adjudication, against these complainants because they were not parties thereto, yet it is of full force as a determination by the Supreme Court of the state of the effect of the constitutional provision. To the same effect, see Fordyce v. K. C. & N. C. R. R. Co. (C. C.) 145 F. 566; Zimmerman v. K. C. N. W. R. R. Co., 144 F. 622, this court; Central Trust Co. v. L., St. L. & T. Ry. Co., 81 F. 772 (C. C. Ky.); Mercantile Trust Co. v. P. & W. R. R. Co., 29 F. 732 (C. C. Pa.); Wheeling B. & T. Ry. Co. v. Reymann Brewing Co., 90 F. 189 (C. C. A. 4); Epling v. Dickson, 170 Ill. 329, 48 N. E. 1001; Kentucky & I. B. & R. Co. v. Clemmons (Ky.) 86 S. W. 1125; Lewis on Eminent Domain (3d Ed.) vol. 2, §§ 886-887. Appellants do

not choose to meet this issue squarely. Instead they contend that the provisions of the bonds granting a first lien upon all the property and revenues of the district is sufficient. They cite a number of cases from this and other courts sustaining the inclusiveness and the sanctity of such a pledge, but in none of those cases was the issue here involved presented in any form, and general language used in all of those cases must be construed in the light of the parties and the issues there involved. All of these decisions might be, and we think are, accurate, but none of them meet or answer the question involved here.

A matter which we wish to emphasize is that, if any other exclusive remedy were open to appellees whereby their rights could be protected without encroaching on the security of the pledge back of these bonds or if there were property of the district not pledged which could respond to their claim, we would regard that as being a situation not here presented. So far as appears in this case, there is no other remedy open to appellees, there is no such surplus property, and their land has been taken to form part of what is virtually a flood reservoir.

Without more appearing in the case, this judgment is superior to any incumbrance which the district could possibly place upon its properties or its revenues. This leaves for answer the question of whether the Keiths have, by their conduct in connection with the establishment of their judgment, so acted as to deprive themselves of this priority and, if so, to what extent.

## II. Laches.

■ This issue as to laches is argued by appellants on the basis that is really a left-handed attack upon the validity of the judgment secured by the Keiths. That line of attack is not open under the assignment of error here. Under that assignment we must take the judgment as binding, and the question as to laches is whether the Keiths have been guilty of laches, and, during the time covered by their inaction, the rights of third parties (these appellants) have attached so that it would now be inequitable to permit this judgment to be given priority. The question of laches is expressed very well by appellants in stating the question which they regard as involved under the point of priority. In their brief they state that question as:

"Can a landowner sit by without presenting his claim for compensation in the manner provided, while millions of dollars received from the sale of bonds are spent, and then assert a claim which, if sustained, will take from the bondholders the security pledged to them for the payment of the bonds so purchased?"

■■ The situation here is that the district was organized in 1917 (Laws Ark. 1917, p. 1053); that the Keith land was not subject to this damage under the original plans. In 1919, there were supplemental plans providing for additional construction. It was this additional construction which caused the damage to the Keith lands. The testimony of Mrs. Keith is: "I saw the 1919 plans and they called for the reservoir. It surrounded our lands." Also, she testifies, "Our land was right in the middle of the reservoir." A part of section 9 of the Act of 1917 (page 1062), under which the district was organized, is as follows:

"The board shall also assess all damages that will accrue to any land owners by reason of the supposed improvements, including all injury to lands taken or damaged; and where they fail to return their assessment of damages as to any tracts of land, it shall be deemed to be a finding by them that no damage will be sustained."

A portion of section 10 of the same act (page 1064) reads:

"Any property owner may accept the assessment of damages in his favor made by the board; or acquiesce in their failure to assess damages in his favor, and shall be construed to have done so unless he gives to the board thirty days after the assessment is filed, notice in writing that he demands an assessment of his damages by a jury, in which event the board shall institute in the circuit court of the county an action to condemn the lands that must be taken or damaged in the making of said improvement; which action shall be in accordance with the proceedings of condemnation of rights of way for railroads, telegraph and telephone companies, with the same right of paying into the court a sum to be fixed by the circuit court or judge and proceeding with the work before assessment by the jury."

It is obvious that these sections provided a method for ascertaining damages such as the Keiths suffered, but whether such remedy is exclusive is another matter. Apparently, the Supreme Court of Arkansas, in the last [Keith v. Drainage District, 185 Ark. 553, 48 S.W. (2d) 236] of the four cases in the litigation in the state court between the district and appellees has determined that the above remedy is not exclusive. But, whether exclusive or not, it is clear that such method required initiation and performance by the

board of the district. We are not informed in this record as to whether the board ever filed any report of assessments and damages on the basis of the 1919 amended plans. It might well be that the board might find no damages as to the Keith land thereby, but there certainly should be some proof that the board acted in the matter. Entire inaction on the part of the board as to benefits and damages respecting the 1919 change in plans cannot defeat the right of the landowner to his damages nor can it be taken as a compliance with the statute, which clearly requires an investigation and action even though such action may result in a failure to return any assessment of damages. This condition of the record does not permit a finding that the remedy provided by the act of 1917 was open to the Keiths in the face of the burden of proof upon appellants to establish laches. Therefore the question would seem to be whether they unduly delayed in bringing their action for damages so that the rights of the bondholders would intervene. The action was brought April 3, 1922. The bonds were in five issues: The first on January 1, 1918; the second on August 1, 1919, which was after the change of plans of that year; the third issue was February 2, 1923; the fourth, December 1, 1924; and the fifth, February 1, 1926. The litigation of the Keith suit was extended, requiring two appeals to the Supreme Court of the state before judgment was secured there in 1932. No undue delay in the prosecution of the action, traceable to the Keiths, is shown by the record.

The first issue of bonds occurred before the damage to this property, and it is difficult to see how it could be affected by any laches occurring thereafter. The second issue was put out very shortly after the change in plans, and obviously is not affected by laches, as there could have been none at the time that issue was put out. The following three issues were after the Keith suit had been filed and while it was proceeding as vigorously as the Keiths could press it. It is impossible for laches to attach to any of those issues.

The decree should be and is affirmed.

VAN VALKENBURGH, Circuit Judge (concurring).

I prefer to put my concurrence in the disposition of this case upon the ground that the record does not disclose that the method provided by statute for ascertaining damages such as the Keiths suffered, because of additional construction under supplemental plans, was observed by the drainage district board.

The record is silent as to whether any report of assessment of benefits or award for damages was ever filed or acted upon.