HOLT *v.* STATE.

Opinion delivered November 26, 1917.

TRIAL—MISCONDUCT OF JURY—FELONY TRIAL—SEPARATION OF JURY
PENDING VERDICT.—During the trial of a prosecution for rape, the
jury was taken out upon the streets of the town, and permitted
to separate and mingle with a large crowd attending a street
concert; many of the crowd were strongly prejudiced against the
defendant. The State offered no evidence that this misconduct
of the jury did not result in any prejudice to the defendant.
*Held,* such misconduct required a reversal of a judgment of con-
viction.

Appeal from Randolph Circuit Court; *J. B. Baker,*
Judge; reversed.

*S. A. D. Eaton,* for appellant.

1. The judgment should be reversed for misconduct
of the jury, in separating and mingling with a crowd
strongly prejudiced against appellant. No effort was
made to controvert the truth of the affidavits filed. Such
conduct of the jury is reversible error. 12 Ark. 782;
20 *Id.* 36, 53; 26 *Id.* 323; 95 *Id.* 428; 57 *Id.* 1, etc.

2. The court erred in its instructions to the jury.
66 Ark. 523; 42 N. W. 903; 110 Ark. 152; 33 Cyc. 1505;
46 Ark. 151; 58 *Id.* 353; 37 *Id.* 592; 49 *Id.* 448; 58 *Id.*
108. See also 62 Ark. 543; 183 S. W. 1059-1066-7-8;
191 *Id.* 1002, 469; 195 *Id.* 997; 93 *Id.* 790; 2 Bishop New
Cr. Law 1182 and others.

3. There was no evidence to support the verdict of
assault to rape. 77 Ark. 37; 99 *Id.* 558; 105 *Id.* 218; 33
Cyc. 1493.

4. The court erred in the admission of evidence and
in allowing improper argument of counsel. 1 Thompson
on Trials; 923-5; 58 Ark. 473; 62 *Id.* 126.

*John D. Arbuckle,* Attorney General, and *T. W.
Campbell,* Assistant, for appellee.

1. The misconduct of the jury was not reversible
error. 95 Ark. 428; 26 *Id.* 323-8; 35 *Id.* 118; 34 *Id.* 341;
13 *Id.* 317; 26 *Id.* 323. The affidavits fail to show a separa-

tion within the rule. Cases *supra;* 12 Ark. 782, 810, 811; 29 *Id.* 248; 44 *Id.* 115.

2. There were no errors in the admission of testimony, nor instructions to the jury. 100 Ark. 132; 85 *Id.* 376; 96 *Id.* 78; 63 *Id.* 470; 78 *Id.* 407, etc; 51 *Id.* 167; 88 *Id.* 499.

3. No improper argument was allowed. 95 Ark. 172-7.

WOOD, J. Miss Mae Smithson was a school teacher. She taught school at Ponder, Missouri, where she met George Holt at Sunday school. They became "sweethearts," and he visited her frequently while she was teaching school at the school house at Ponder, Missouri, and also at her home in Reyno, Randolph County, Arkansas. Holt asked Miss Smithson to marry him and she promised to do so if he would defer the matter for two years, giving as her reason for the delay that she was then not twenty-one years old, and that her mother was a widow and needed her assistance, and promised that if he would wait for that time and they still loved each other she would marry him. He pressed his suit, and she finally told him that she had changed her mind and did not love him as he deserved to be loved, and therefore refused to marry him. Holt professed still to be her friend and told her that he would do anything he could for her, and that he thought he could get her another school near Warm Springs when her time was out with the school she was then teaching. He wrote her two letters, dated at Warm Springs, in which he represented that the directors were his friends and that he had interviewed them in her behalf and that they had promised to employ her to teach the school, but before they did so they wanted her to come up to Warm Springs so they could see her and arrange the contract. Holt arranged with Miss Smithson to meet her at Pocahontas on a certain day and to take her to Warm Springs. They met in Pocahontas on that day and started out from Pocahontas about 3:30 o'clock in the afternoon in a two-

horse buggy for Warm Springs, which was a distance of about 18 miles. Dark overtook them, and, after driving for quite a while, Holt detoured from the road they were traveling and took a dim road through a woody place. When they arrived at a certain place he stopped the team, drew a gun on Miss Smithson, told her he had not got any school, and never had, and that he was simply carrying out a plan to take her life. He asked her to allow him to have the privilege of sexual intercourse with her, and upon her resisting he continued his threats and intimidation until finally she lost consciousness and he had intercourse with her, which she could testify as a fact from her painful condition which she realized after she regained consciousness and the condition of her clothes.

The above is a condensed statement of the essential facts upon which Holt was indicted for the crime of rape, was convicted of an assault with intent to rape and sentenced to imprisonment in the State penitentiary for a period of twenty-one years, and from the judgment of the court he prosecutes this appeal.

The defendant admitted the intercourse, and set up and testified that it was obtained by the consent of the prosecutrix.

There is an exceedingly voluminous record, and the motion for a new trial assigns seventy-six grounds of alleged error in the rulings of the court in admitting and rejecting testimony and in the granting and refusing of prayers for instructions. We have examined all these and find no reversible error in any of them, except as set forth in the 68th assignment, which is as follows:

"The jury, disregarding the instruction of the court to the effect that they were to remain together and in a body at all times and would not be permitted to separate for any purpose until after the rendition of their verdict herein, on the evening of July 25th, during the progress of the trial herein, during a street concert, when there was a crowd of perhaps two hundred people on the

street, separated and mixed and mingled with such crowd, indiscriminately.''

In support of this assignment of error, the appellant filed the affidavit of Dee Mock, who stated that, ''during the evening of July 25, 1917, while standing on the pavement south of the court square in said town (Pocahontas) listening to the music of a street concert, which had attracted a large crowd of people, my attention was called to the fact that the trial jury, which had been empaneled to try the case of the State of Arkansas v. George Holt, charged with rape, alleged to have been committed on the person of one Mae Smithson, was present with the crowd of people, and some of said jurors had separated themselves from their fellow jurors and were mingling with said crowd of people, while another one of said jurors separated himself from his fellow jurors and walked several feet away to where a gentleman was sitting in his automobile and carried on a conversation with the gentleman for several minutes. I do not know the subject of such conversation, nor do I know that the jurors who were mingling with said crowd of people spoke to any of them, but I know that a large number of said crowd of people were strongly prejudiced against said George Holt.''

The affidavit of S. N. Bailey was also read, which states that ''on the evening of the 25th of July, 1917, while the jury selected in said cause (State v. George Holt) was in a body on the streets of said town (Pocahontas), a street concert was in progress in the street just south of the court square; that a large crowd of people had assembled at said place attracted by the music; that while enjoying said music, I noticed several jurors separate themselves from the other jurors and mingle with the crowd there assembled, for several minutes. I do not know if any words were passed between any of said jurors with any one in said crowd, but do know that numbers of people in said crowd were strongly prejudiced against said George Holt.''

No affidavits were introduced on the part of the State by the jurors, the officer in charge of the jury, or others, to controvert the truth of the statements contained in the above affidavits, and there were no affidavits on the part of the jurors who tried the case to the effect that they had not had any conversation with anyone concerning the case and had not heard it discussed, and, in short, that nothing had occurred on the occasion mentioned which in any manner influenced them in the rendition of their verdict finding appellant guilty of the crime charged.

In *Ferguson* v. *State,* 95 Ark. 428, the facts were that after the case was in the hands of the jury to deliberate upon their verdict, and while they were in the custody of the officer, when the jury were passing a certain store in the town of Magnolia one of their number left his fellows and went to the rear of the store. The remaining members of the panel and the officer in charge passed on by the store to the corner of another building and remained there until the juror who had separated from them returned. The juror who left his fellows was out of their sight until he returned to them. The court, speaking of the facts there disclosed, quoted from *Maclin* v. *State,* 44 Ark. 115, 119, as follows: "But it has long been the rule of this court in case of felony that separation of a juror from his fellows pending the trial casts upon the State the burden of showing that no improper influence was brought to bear upon the juror during his absence. In other words, the mere fact that a juror separates from his fellows, without the order of court, is *prima facie* ground for a new trial, unless it affirmatively appears that the separating juror was not subjected to any noxious influence." The court, continuing, said: "The object of this rule is apparent. The jury are kept together, and an officer is put in charge of them and directed to see that they do not separate to protect the defendant against outside influence. They are not allowed to have any communication with outside persons with re-

spect to the guilt or innocence of the defendant on trial, and it is the duty of the officer in charge to see that they do not. This protection is due to the defendant, and the State should see that he receives it. It is not expected of him to employ someone to watch the jury and report any misconduct on their part. Hence, when they separate the burden is upon the State to show, by circumstances or directly, that the absent juror was not subjected to any injurious influence.''

Now, the uncontroverted facts here disclose that the jurors who had been instructed to not separate from their fellows while deliberating upon their verdict, and who had been placed in the custody of an officer charged with the duty to see that they obeyed these instructions of the court, separated themselves and mingled with a large crowd of people, a large number of whom "were strongly prejudiced against George Holt;'' that they mingled with the crowd for several minutes and one of the jurors went several feet away and carried on a conversation with a gentleman for several minutes.

If there were a large number in the crowd with whom the jurors mingled who were strongly prejudiced against the appellant, who can say, in the absence of evidence to the contrary, that members of the crowd so strongly prejudiced against appellant did not avail themselves of the opportunity thus presented to make remarks, concerning appellant and the crime with which he was charged, so derogatory in character as to inflame the minds of the jury against him. A more flagrant disobedience of the orders of the court could rarely occur, for the evidence shows a complete separation of all the jurors and an opportunity for each of them to have heard things said that might have greatly influenced and prejudiced their minds against appellant. The very object of the rule is to prevent the jury from being subjected to such possible sinister influences.

Rape is a crime so heinous that generally the mere charge of itself is sufficient to set ablaze the minds of the public in the community where the crime is alleged to have

occurred against the accused victim. Hence, courts usually adopt, and are justified in adopting, most stringent methods in order to insulate the jury, as far as possible, from any current of popular prejudice. Here the record shows they were brought in direct contact with it. When the appellant proved that they might have been affected by it this made a *prima facie* case against the purity of the verdict and was sufficient to cast the burden upon the prosecution of upholding its integrity.

As there was a palpable disobedience of the instructions of the court, both on the part of the jurors and the officer having them in custody, with no word upon the part of the State to show by the jurors themselves or others that they emerged from the poisoned circle without contamination, their verdict has been impeached and the appellant, on this account, must be awarded a new trial. See, in addition to cases above, *Vaughan* v. *State,* 57 Ark. 1, and other cases cited in appellant's brief.

We need not discuss other assignments of error. The alleged errors in regard to refusal to admit certain expert testimony, and as to the remarks of counsel, we assume will not occur on the new trial, and the other assignments are not of sufficient importance to call for a discussion.

The judgment is, therefore, reversed, and the cause is remanded for a new trial on the charge of assault with intent to commit rape.