MILLER *v.* WATKINS.

4-4728

Opinion delivered October 4, 1937.

864

*Golden & Golden,* for appellant.

*W. W. Grubbs,* for appellee.

MEHAFFY, J. Caroline Watkins, one of the appellees, filed suit against Lenwood Watkins, another of the appellees, for unlawful detainer for the recovery of the possession of certain described lands in Chicot county, Arkansas.

Thereafter, the appellant, Odie Miller, filed an intervention and complaint in ejectment against Caroline Watkins, Lenwood Watkins, Claude Watkins, Lester Watkins, Rosie Watkins Howard, Moeast Watkins, individually, and Moeast Watkins, administrator of the estate of Willie Watkins, deceased. He alleged that he was the owner of the lands involved and that the defendants were not entitled to possession; that Caroline Watkins is the widow of Willie Watkins, deceased; that she and the other appellees constitute the sole heirs-at-law of Willie Watkins, deceased, and as such are proper parties defendant herein for the complete adjudication of the rights of the parties to said lands. He alleged that he was the owner and entitled to possession of said property; that the Eudora-Western Drainage District was duly and legally created and organized under and by virtue of the laws of the state of Arkansas, and that said lands were situate in said district and were im-

pressed with a lien securing the payments of certain bonded indebtedness against the lands; that the defendants wholly failed and refused to pay the installments levied on said lands for the years 1923, 1924 and 1925, and that the district caused said lien to be foreclosed in the Chicot chancery court on November 5, 1929, and that the defendants wholly failed and refused to redeem said lands within the time prescribed by law, and the commissioner of the court sold said lands to said improvement district. On April 9, 1935, appellant purchased said lands from the receiver and received a deed conveying said lands to him.

Caroline Watkins filed separate answer. She admitted that she was the widow of Willie Watkins, deceased; that the improvement district was legally created and that the lands involved in this suit are embraced in said district; that said lands were assessed with certain benefits to be paid in annual installments; she admits that the drainage taxes were extended against said lands for the years 1923, 1924 and 1925, and admits that there was a foreclosure in Chicot chancery court and a decree entered and deed made as alleged by appellant; admits that the receiver for the district conveyed the lands to appellant on April 9, 1935; denies that appellant is the owner of said lands or has any interest or right to the possession, and states that the foreclosure decree and sale thereunder and the deed are void for the following reasons: first, that the lands involved were forfeited to the state on June 9, 1924, for the taxes of 1923 and was duly certified to the state on July 31, 1926; that the title remained in the state from that time until July 30, 1931, when the same was purchased by Willie Watkins, her former husband; that at all times mentioned above, the title to said lands was in the state of Arkansas. Appellee then mentions several other reasons why the sale by the district was void. That appellee's husband acquired the lands 35 or 40 years ago, built a home on said lands, and occupied said 40 acres as a homestead continuously until the fall of 1933, when he died, and that appellee has remained in continuous possession

of the land since his death, occupying the same as her homestead.

The evidence shows that the foreclosure suit by the district and the sale and deed to appellant were all during. the time the title to the land was in the state of Arkansas. The amount of the taxes for which the land was sold by the district was very small, somewhere between $30 and $40. The appellees had not paid either the state and county taxes, or the improvement district taxes.

It was the duty of Willie Watkins and the appellees to pay the taxes on said land. The parties waived a jury and submitted the case to the court sitting as a jury, and the court found in favor of Caroline Watkins and dismissed the intervention and complaint of the appellant, Odie Miller, and from this judgment appellant prosecutes an appeal.

There is no conflict in the evidence. The facts may be stated briefly as follows: Willie Watkins, 30 or 40 years ago, acquired this land and built his home on it and lived there the rest of his life, and Caroline Watkins, his widow, continued to occupy. the place as her homestead, and is still occupying it. The land was forfeited for state and county taxes, and purchased by the state in 1924 for the taxes of 1923. Suit to foreclose by the district was filed April 9, 1927. The suit was to foreclose for the taxes for 1923, 1924 and 1925. The land was sold and the district became the purchaser, and the receiver of the district executed to Odie Miller a deed to the lands on April 9, 1935. The foreclosure decree was dated November 5, 1929, the sale was reported on January 27, 1930. The deed was made by the state to Willie Watkins, husband of appellee, on July 30, 1931.

The appellant, in his intervention and . complaint, prayed judgment that he be adjudged the lawful owner of said land and premises, and for possession of the same. He did not testify in the case. The only question involved here is who has the paramount title, the appellant or the appellee, Caroline Watkins.

The court has repeatedly held that when lands are forfeited and sold to the state, that improvement district

taxes are suspended during the time the state has title, but they are not extinguished. As soon as an individual purchases from the state, the lien of the improvement district for assessments attaches. It is undisputed that at the time of the foreclosure by the district, the title to the lands was in the state of Arkansas, and that a deed was received by Watkins from the state in 1931. Under all of our decisions on this question the state had the paramount title, and all liens for assessments were suspended during the time the state had title.

Appellant relies on the case of *Tallman* v. *Board of Commissioners Northern Rd. Imp. Dist. of Ark. County,* 185 Ark. 851, 49 S. W. (2d) 1039. But we quoted with approval in that case the case of *Turley* v. *St. Francis County Rd. Imp. Dist. No. 4,* 171 Ark. 939, 287 S. W. 196, as follows: "Of course, the forfeiture to the state of lands for general taxes necessarily suspends the enforcement of the special tax lien as long as the title remains in the state, but, as the lien, under the terms of the statute, is not extinguished, and continues until the special taxes are paid, the same can be enforced when the land goes back into private ownership. This construction of the statute gives full recognition to the state's paramount right of taxation, and in nowise detracts from the dignity and power of the state as against subordinate governmental agencies."

Another case to the same effect is *Wyatt* v. *Beard,* 179 Ark. 305, 15 S. W. (2d) 990. In the case of *Hooper* v. *Chandler,* 183 Ark. 469, 36 S. W. (2d) 398, we announced the same doctrine. We said in the Tallman case, *supra,* that the lien for assessment taxes was suspended and could be enforced after the lands went back to private ownership, but we announced that this meant a valid sale, and stated that a void sale would not suspend the statute, because if void, it is a nullity, binding on no one.

But, when lands have been sold to the state, the state has a paramount lien, and, if sold, as they were in this case, for improvement district taxes, they are still subject to the paramount right of the state.

One of our latest decisions is in the case of *Stringer v. Conway County Bridge Dist.*, 188 Ark. 481, 65 S. W. (2d) 1071. We there said: ''When lands are forfeited to the state for nonpayment of taxes, and confirmation is had under act 296 of 1929, all irregularities and informalities connected with the forfeiture and sale for taxes are cured, and in all cases where the state had the power to sell, the title may be confirmed in the state. If the state did not have the power to sell for taxes, then, of course, the sale would be absolutely void, and a confirmation would be void. If taxes on a tract of land had already been paid, the sale would be void, or if the property was not subject to taxation; but in all cases where the state has power to sell, and a decree has been entered in accordance with the provisions of act 296 of 1929, although the sale may be void for irregularities and informalities, all persons are barred by the decree of confirmation, and cannot thereafter take advantage of any informality or irregularity.''

In the instant case it is conceded that the sale to the state was valid, and, if so, the lien for improvement district assessments was suspended while the state had title; but when purchased by an individual, the lien for the assessment attached.

Willie Watkins was under the duty to pay the taxes and assessments. After the time for redemption expires, where there is a valid sale to the state, the original owner or any other person may purchase from the state; but where the person whose duty it was to pay the taxes, purchases from the state the lien of the improvement district attaches, and while such person is entitled to the premises, the lands are subject to the lien for the improvement district assessments.

In this case, after the time for redemption expired, Willie Watkins, the original owner, purchased from the state. It being his duty to pay the taxes, he could not let it forfeit to the state and then purchase it, and thereby evade the payment of the improvement district taxes. The title of the appellant, Odie Miller, was void because there had been a valid sale to the state. The court cor-

rectly held that Caroline Watkins was entitled to the possession, but the land is subject to the improvement district taxes.

The judgment is affirmed.

SMITH, J., (on rehearing). Upon further consideration of this case we reaffirm the original opinion except in the particular hereinafter stated. The cases cited in the original opinion make a distinction which now appears to be unsound. These cases hold that where lands have been forfeited to the state an improvement district may not sue to enforce its taxes until the land has been redeemed or purchased from the state, and thus returned to private ownership, at which time—and not before—the improvement district may proceed to enforce payment of its delinquent taxes. But these cases hold that this limitation upon the right of the improvement district to enforce, by suit, the payment of taxes due it applies only where the sale to the state was a valid sale, and does not apply if, for any reason, the sale to the state was invalid. In the latter case the improvement district postpones the suit at its peril, and will be barred of its remedy to enforce its taxes if the applicable statute of limitations has run while the title was apparently in the state. There appears no valid reason for this distinction.

This rule requires the improvement district, in each instance, at its peril, to determine the validity of the forfeiture to the state. If the suit is brought and the sale is valid the improvement district is cast in its suit for costs and is denied relief. However, if the sale to the state is invalid, and the suit is not brought before the bar of the statute of limitations has fallen, the right to sue is barred, and the improvement district will lose its taxes, and other property owners in the improvement district who have paid the taxes extended and assessed against their lands will be required to make good the loss of revenue or of having their future taxes increased, subject only to the limitation that they shall not be required to pay anything in excess of their total assessment of benefits. *Arkansas-Louisiana Highway Imp. Dist.* v. *Pickens,* 169 Ark. 603, 276 S. W. 355; *Chicago Mill & Lbr.*

*Co.* v. *Drainage Dist. No. 17,* 172 Ark. 1059, 291 S. W. 810; *Jefferson Bank of St. Louis* v. *Little Red River Levee Dist.,* 186 Ark. 1048, 57 S. W. (2d) 805; *Watson* v. *Barnett,* 191 Ark. 990, 88 S. W. (2d) 811.

There does not appear to be any valid or just and proper reason for making this distinction. It is an elementary principle in the law of limitations upon causes of action that the statute does not begin to run until the right to sue has accrued. Now we have held, in the cases cited, which the original opinion in this case reaffirms, that an improvement district may not sue where the sale to the state was good. These cases relate to and are based upon the opinion in the case of *Turley* v. *St. Francis Road Imp. Dist. No. 4,* 171 Ark. 939, 287 S. W. 196. That case did not, however, distinguish between good and invalid sales, this distinction being made in later cases. The right to sue was denied because the state's lien for its taxes is the paramount lien, and suit could not be brought against the state to determine whether the sale to it was good or bad, for, even in the case of invalid sales, the title is apparently in the state, its taxes have not been paid, and its lien subsists and remains paramount and would not be divested or discharged by the suit of an improvement district to enforce payment of taxes due it.

Upon these considerations our former opinions are modified to the extent of now holding that the right to sue is suspended where lands or town lots have been sold to the state, and that this suspension is not dependent upon the validity or invalidity of the sale to the state. The right is suspended in either case, as the state cannot be divested of its paramount lien for its taxes, whether the sale was good or bad. It must also follow from this holding that the right of the improvement district to sue is not barred by the statute of limitations through failure to sue while the actual or apparent title is in the state.

Mr. Justice MEHAFFY dissents.

MEHAFFY, J., (dissenting). I cannot agree that this court has the right to amend or suspend the statute of limitations. The opinion on rehearing says: "Upon these considerations our former opinions are modified to the extent of now holding that the right to sue is suspended where lands or town lots have been sold to the state, and that this suspension is not dependent upon the validity or invalidity of the sale to the state. The right is suspended in either case, as the state cannot be divested of its paramount lien for its taxes, whether the sale was good or bad. It must also follow from this holding that the right of the improvement district to sue is not barred by the statute of limitations through failure to sue while the actual or apparent title is in the state."

The statute provides when the suits to collect assessments shall be commenced. If not commenced within the time fixed by the statute the cause of action is barred. Section 12 of Art. 2 of the Constitution provides: "No power of suspending or setting aside the law or laws of the state shall ever be exercised except by the General Assembly." This court in discussing the power of the Governor to remit penalties for delinquencies in the assessment of taxes said: "The manifest design of the framers of the Constitution was to limit the power to pardon for crime and to remit fines and forfeitures to criminal and penal cases after conviction of crime or judgment for the imposition of fine or forfeiture, and not to allow its application to penalties and forfeitures civil, remedial and coercive in their nature. This is clearly indicated in another provision of the Constitution which expressly declares that: 'No power of suspending or setting aside the law or laws of the state shall ever be exercised except by the General Assembly.' Const., Art. 2, § 12. The effect of a general amnesty as was attempted by the proclamation now under review would operate as a suspension of the law and come within the spirit, if not within the letter, of the inhibition of the Constitution just quoted, and when the two provisions of the Constitution are read together it is clear that it was intended to confine the power of the executive, with respect to the remission of fines and forfeitures, strictly to criminal

and penal cases after judgment, and not to remedial and coercive penalties such as a penalty for non-assessments or nonpayments of taxes." *Hutton* v. *McCleskey*, 132 Ark. 391, 199 S. W. 74. This court has also held that a statute providing that no action for the recovery of any land against any person, his heirs or assigns who may hold such lands under a donation deed from the state, shall be maintained, unless it appear that the plaintiff, his ancestor or grantor was seized or possessed of the lands within two years next before the commencement of such suit or action.

This court said: "The statute itself contains no exceptions from its provisions in favor of infants or other persons under disability, and there is nothing in it that implies that the legislature intended that any such exceptions should be made. * * * That such exceptions are commendable, and evince a proper, just, and humane regard for the rights and interests of a large and helpless class of landowners cannot be controverted. But they are within the power of the legislature to grant or withhold, and its exercise of the power cannot be restrained or varied by the courts to subserve principles of justice and humanity." *Sims* v. *Cumby*, 53 Ark. 418, 14 S. W. 623; *Sparks* v. *Farris*, 71 Ark. 117, 71 S. W. 255.

Section 190, 17 R. C. L., Title, Limitations, reads as follows: "As a general rule the courts are without power to read into these statutes exceptions which have not been embodied therein, however reasonable they may seem. It is not for judicial tribunals to extend the law to all cases coming within the reason of it, so long as they are not within the letter. Considerations of apparent inconvenience or hardship will not be allowed to control. The enactment of the law-making power within its legitimate field must not be obstructed by the judicial administration. Such power is ample, if it sees fit, to extinguish any right enforceable by an action, if judicial remedies for such enforcement are not invoked within such reasonable time as it sees fit to name. The possessor of the right may be under disability personally to enforce the same within the prescribed period by reason of infancy, insanity, imprisonment or other cause, and yet the stat-

ute in general terms, not containing any exception to save the right, will extinguish it. The legislature is the judge, and the sole judge in such matters, subject to no judicial review whatever, so long as it acts within the boundaries of reason. It is far better that occasionally one should suffer severely from the enforcement of the law, as the court finds it, than that they should endeavor to bend the law out of its manifest scope to avoid that result. So courts in construing a special statute of limitation will not read another statute into it and thus incorporate exceptions not contained therein, or give it any new or unusual interpretation, but they are to give' effect to the object of the law creating the exception which is to prevent the statute from running during the time the claimant is prevented without fault on his part from suing, so that he can have the full benefit of the time allowed him in which to bring his action. In applying the rule it has been held that in absence of a statute making concealment an exception to the statute of limitations, the courts cannot create one, however harsh and inequitable the enforcement of the statute may be. And the courts cannot create an exception where an action was not commenced within the period because of the act of a person in designedly eluding service of process." Citing: *Lewis* v. *Pawnee Bill's Wild West Co.*, 6 Penn. 316, 66 Atl. 471; *Pietsch* v. *Milbrath*, 123 Wis. 647, 101 N. W. 388.

No claims of people need protection more than infants and others under disability, but this court has uniformly held that the power to protect them belongs to the legislature. If the court is powerless to protect infants and others under disability by suspending the statute of limitations, it certainly cannot protect improvement districts and the inhabitants thereof by suspending the statute of limitations. I think the district can and must sue within the time fixed by statute. The action, when brought, if the title is in the state, can either be continued, or if there is a judgment and sale it would be subject to the paramount interest of the state. I respectfully dissent from the holding of the majority that this court has power to suspend the statute of limitations.

Mr. Justice BUTLER agrees with me in the conclusion herein reached.