DAVIDSON v. CROCKETT.

4-5880 140 S. W. 2d 695

Opinion delivered April 29, 1940.

 

*W. F. Kirsch* and *J. M. Futrell,* for appellant.

*O. T. Ward* and *E. G. Ward,* for appellee.

SMITH, J. John L. Crockett and certain other land-owners filed suit against the St. Francis Drainage District of Clay and Greene counties and Subsidiary District No. 10 thereof, praying that they be allowed to re-deem the lands described in their complaints owned by them respectively. A decree had been rendered foreclos-ing the liens of the improvement districts for the unpaid taxes, pursuant to which the lands here involved had been sold to the improvement districts. The sale was al-leged to have been void for numerous reasons. More than one decree of foreclosure was attacked, but the only one here to be considered was the sale made in case No. 2502. However, all the decrees were vacated for the same reason.

The court found that Crockett was the owner and in possession of the lands which he sought to redeem. There appears to be but little question that he had such title as warranted his suit to redeem, indeed, he appears to have acquired the title of the record owner of the lands.

The court found that in case No. 2502 the lands here involved were sold to the improvement districts, pur-suant to a decree foreclosing the lien of the improvement district, on February 15, 1928, and that the commissioner executed a deed to the district. It was adjudged that "all of said (foreclosure) proceedings therein and said deed should be canceled and declared null and void, inso-far as they apply to the lands involved herein."

This decree appears to have been based upon the finding of fact "that the lands involved in this cause became delinquent for the non-payment of the state and county taxes thereon and were duly certified to the State Land Commissioner of the State of Arkansas as forfeited state lands prior to the institution of the foreclosure suits by the defendants above mentioned and set forth."

It was found also "That the St. Francis Drainage District of Clay and Greene counties, Arkansas, one of the defendants herein, redeemed certain lands from the state through the State Land Commissioner and received his deed number 30,160 under date of January 17, 1930," the lands here involved being embraced in this deed from the State Land Commissioner.

Certain of the lands involved in this redemption suit had been sold and others leased by the improvement districts, and the court made a finding as to the rents collected, and ordered that they be credited on the redemption of the lands which had been leased.

One hundred twenty days were allowed in which to effect redemption by paying taxes, penalty, interest and costs, less the rents, and it was "further considered, ordered and decreed that, in default of said redemption, the liens of the defendant districts for the amounts respectively shown delinquent, plus penalty and interest, be foreclosed and said lands and all the right, title, claim, interest and estate of the plaintiffs therein be sold in satisfaction thereof and that all the rights of the plaintiffs thereafter be forever barred."

Appellants, V. B. and Versa Davidson, filed an intervention in this cause, in which they alleged their ownership of that part of "the south half of section 31, township 19 north, range 9 east, that is on the northwest side of Blue Cane Subsidiary Drainage District No. 10 ditch, a tract of land containing 76.98 acres." They alleged that this subsidiary drainage district had acquired title to the above-described land, and had, on July 7, 1936, conveyed the same to them, the drainage district having acquired its title to the land through the foreclosure and

sale thereof to it under the decree from which Crockett sought to redeem. They alleged that Crockett was in possession of the land, and had collected rents for the years 1936 and 1937, the rent collected being $700 for each of these years. The interveners prayed that their title be quieted as against Crockett, and that they have judgment against him for the rents amounting to $1,400.

The decree from which we have quoted recited that "as to the issues raised by the pleadings and intervention of V. B. Davidson and Versa Davidson, his wife . . . , this cause be continued and this decree be without effect as to said lands."

On September 13, 1939, the cause was further heard on the intervention of V. B. and Versa Davidson, and the recital appears in this decree, as it did in the former decree, that the lands had forfeited to the state prior to the institution of the suit to foreclose the liens of the improvement districts. The court further found and declared the law to be that the owners' right to redeem had not been lost by the subsequent purchase of the lands from the state by the improvement districts.

The court then proceeded to find the sum total paid by the Davidsons for the land, and the taxes they had subsequently paid, and the value of the improvements on the lands, all of which made a grand total of $2,095.05, which sum was credited with the rental value of the land, which was found to be $568.20. Crockett was then given 30 days within which to pay the Davidsons the difference between these items, amounting to $1,526.85, which, when paid, should operate to effect a redemption from the sale for the delinquent improvement taxes, and that the title of Crockett should be quieted and confirmed. Tender thereof was made, which the Davidsons refused to accept and they have appealed from that decree.

It is first insisted that the decree should be affirmed for the reason that the first decree herein referred to, that rendered September 30, 1938, was a final decree, from which no appeal was taken within the time limited by law, and that this decree adjudged the rights of the numerous parties to that suit to redeem from the origi-

nal foreclosure decree, and that, so far as the interveners, the Davidsons, were concerned, there remained only to determine the value of their improvements, the purchase price paid by them to the district for the land, this being the taxes, etc., for which the land had been sold, and the amount of taxes paid by them, against which should be credited the rental value of the land. None of these items are now in dispute, and the only question raised on this appeal is that of the right to redeem.

There were numerous parties to the decree of September 30, 1938, and it involved a large number of tracts of land. It expressly declared the right to redeem, and no one appealed from that decree. Thereafter no additional testimony was taken upon the question of the existence of this right, and it, therefore, appears that the continuance of the intervention of the Davidsons was only to determine the amount that should be paid them to effect the right of redemption. *Newald* v. *Valley Farming Co.*, 133 Ark. 456, 202 S. W. 838; *Parker* v. *Bodcaw Bank*, 161 Ark. 426, 256 S. W. 384; *McGowan* v. *Burns*, 182 Ark. 506, 31 S. W. 2d 953.

Although the decree of September 30, 1938, awarding the right of redemption became final, because no appeal was prosecuted therefrom, the decree of September 13, 1939, reaffirmed that right, and prescribed the terms upon which it might be exercised, and it is not disputed that Crockett offered to comply with those terms within the time allowed for that purpose.

This decree of September 13, 1939, should be affirmed, because the right of redemption existed, as was adjudged in both decrees. This is true because the right to sue to enforce payment of the delinquent improvement taxes had been suspended through the forfeiture of the lands to the state, the title then being apparently in the state.

The opinions in the case of *Miller* v. *Watkins*, 194 Ark. 863, 110 S. W. 2d 531, 116 S. W. 2d 466, 113 A. L. R. 913, are decisive of this question. The original opinion in that case reviewed the prior decisions and announced their effect to be as follows: The forfeiture to the state

of lands for general taxes necessarily suspended the enforcement of the special lien as long as the title re-. mained in the state, but as the lien, under the terms of the statute, is not extinguished and continues until the special taxes are paid, the same can be enforced when the land goes back into private ownership. This pronounce- ment was first made in the case of *Turley* v. *St. Francis County Road Imp. Dist. No. 4,* 171 Ark. 939, 287 S. W. 196. The opinion in the Turley case did not attempt to differentiate between the effect of valid and void forfei- tures to the state, but later opinions, including the first or original opinion in *Miller* v. *Watkins,* did make a dis- tinction, the distinction being that if the forfeiture to the state was valid, the right of the improvement dis- trict to sue was suspended until the land had returned to private ownership, at which time the right to sue accrued. The effect of these cases was to require im- provement districts to determine, at their own risk, the validity or invalidity of sales to the state. If these sales were valid—and not many of them were—the right of improvement districts to foreclose their liens for delinquent improvement taxes was suspended until the property which had forfeited to the state had been returned to private ownership. If the sales were in- valid, the improvement districts had to bring suit before the bar of the statute of limitations against such suits had fallen, and if they failed to do so they would lose the taxes against which the statute of limitations had run.

In the original opinion in the *Miller* v. *Watkins* case, the sale under the decree foreclosing the lien of the im- provement district was held to be void, for the reason that the previous sale to the state for the nonpayment of the general taxes was valid.

It was thought that inasmuch as in either case, whether the forfeiture to the state was void or was valid, that the title was apparently in the state, and no suit could be brought against the state to determine the validity of the forfeiture to the state, that the distinction was un- sound which required suits to be brought in one instance and forbade it in the other to enforce payment of delin- quent improvement district taxes.

It was, therefore, held, in the opinion on rehearing in the case of *Miller* v. *Watkins, supra,* that in either case the right to sue to enforce delinquent improvement taxes was suspended after forfeiture to the state until the land had returned to private ownership.

The court, therefore, properly held in the decree from which is this appeal that the right to sue had been suspended through the forfeiture to the state, and it became unnecessary to consider and determine the validity of the sales to the state. The improvement districts tax liens having been foreclosed when the right to sue did not exist, the right to redeem was properly accorded.

Subsequent to the delivery of the opinion in the case of *Miller* v. *Watkins, supra,* the General Assembly, at its 1939, session, passed act 126, p. 295, which authorized improvement districts to foreclose their delinquent assessments where the delinquent lands had been forfeited and sold to the state for the non-payment of the general taxes. But this act has no application here, for the reasons that it is not retroactive or curative in its provisions.

A later act, passed at the same session, is both retroactive and curative (act 329, Acts 1939, p. 859); but we need not consider its effect here for two reasons. First. In the reply brief in this case it is invoked only upon the question of the right of the improvement district to redeem from a tax sale to the state with its funds. Second. The invalidity of the decrees ordering the foreclosure of the liens of the improvement districts, for the reasons herein stated and the consequent right of redemption, was adjudged in the decree rendered September 30, 1938, from which no appeal was prosecuted. This was prior to the passage of act 329 of the Acts of 1939, which, without an emergency clause, was approved March 15, 1939, and whatever may be the effect of its curative provisions, it would have no effect on the decree of September 30, 1938, which had become final before act 329 became a law.

There being involved here no question except the right of redemption, the decree adjudging the existence of that right must be affirmed, and it is so ordered.