PERSON *v.* MILLER LEVEE DISTRICT No. 2.

4-6283                                    150 S. W. 2d 950

Opinion delivered April 7, 1941.

174

*L. K. Person,* for appellant.

*Henry Moore, Jr.,* for appellee.

GRIFFIN SMITH, C. J. December 24, 1936, L. K. Person sued in Miller chancery court for damages to property aggregating $2,750, and in the same action alleged that a tax deed of Miller Levee District No. 2 was void.[1] It was asserted that "within the period of the statute of limitations for this suit" the district took thirty-five acres of appellant's land as a levee right-of-way, such property being worth $50 per acre, or $1,750; also, that forty acres were otherwise damaged to the extent of $25 per acre.

May 27, 1940, the defendant's demurrer of May 3, 1940, was sustained. The decree recites that foreclosure of the district's lien for delinquencies of 1930 in chancery cause No. 3415, purchase by the district, and confirmation, were void for want of proper description; but it

---

[1] The land is described in the complaint as 75 acres lying in the east half of section twelve, and the northeast quarter of section thirteen, township fifteen south, range twenty-six west.

was further held that foreclosure in chancery cause No. 3855 under decree of September 8, 1934, for 1931 delinquencies, was valid.[2]

Numerous pleadings were filed.[3] There were amendments to the complaint, demurrers, motions, an intervention, etc. Damages alleged to have been sustained were increased to $4,027.50.

In March, 1931, Person, as security for a loan, conveyed to H. C. McCurry, trustee for Texarkana National Bank, 1,292.5 acres, subject to mortgage held by Federal Land Bank of St. Louis. The trust deed included the property which forms the basis of this litigation.

Default having occurred in the debt, foreclosure was instituted by the Texarkana bank. A decree dated March 24, 1936, directed that the lands be sold September 26 of the same year. Defendant filed a creditor's petition in the district court at Texarkana under authority of the Frazier-Lemke Act. Effect was to suspend the state court's power to consummate the sale.[4]

January 7, 1938, Person, in writing, proposed to the bank that it refrain from taking a deficiency judgment and that it release him from further liability in the foreclosure matter in consideration of his consent that the sale be confirmed.[5] A stipulation was that if there should be a recovery in the damage suit, proceeds should be divided 25 per cent. to Person and 75 per cent. to the bank, Person to pay all expenses.

[2] Cause No. 3415 was styled *"Miller Levee District No. 2 v. Henry Turner et als."* No. 3855 was styled *"Miller Levee District No. 2 v. Missouri State Life Insurance Co. et als."*

[3] April 22, 1937, upon motion of the defendant district, the cause was transferred to circuit court. It was subsequently sent back to chancery court.

[4] A headnote to *Union Joint Stock Land Bank of Detroit* v. *Byerly*, 310 U. S. 1, is: "Jurisdiction of a state court in foreclosure, suspended by the institution of a proceeding under § 75 of the Bankruptcy Act, again attached upon dismissal of the bankruptcy case and empowered the state court to confirm a foreclosure sale previously made and to order a sheriff's deed." (60 S. C. Rept. 773; 84 L. Ed. 1041.)

[5] The proposal was that Person agree that the chancery court might act at a special term January 10. By a writing of February 28, 1938, signed by Person, his wife, and the bank, it was stipulated that confirmation might be had January 27, 1938. The proposal of January 7 was acknowledged and filed in chancery cause No. 4459— the bank's foreclosure suit—and so was the agreement of February 28.

October 23, 1937, the district (while the cause was still in circuit court) moved that the bank be made a defendant. The bank's foreclosure suit against Person was mentioned, coupled with an averment that if the property had been damaged, the bank was entitled to recover. There is this statement: "The plaintiff, in his amended and substituted complaint, has alleged (and the defendant has admitted) that the lands [involved] were purchased from [the levee district by the bank] and a deed was executed by the [district to the bank] conveying the legal title, [such deed having been issued] March 28, 1936." [6]

In its intervention the bank recited the indebtedness secured by the trust deed, and added: "By the terms of [the judgment the lien created by the deed of trust] was foreclosed on said lands [and a commissioner was appointed] to make the sale on the 26th day of September, 1936. [The] decree is complete in all essentials and is referred to for particulars."

Action of Person in filing his petition in federal court was referred to. It was then stated that a compromise settlement had been made with Person, in consequence of which there was an order of the district court which had the effect of revesting state judicial authority. The chancery court entered a decree September 27, 1937, setting the sale for January 4, 1938. It was alleged that except for payments aggregating $3,000, the judgment of March 24, 1936, was unsatisfied, ". . . and the sale to be made on the fourth day of January, 1938, is for the purpose of satisfying said decree in whole or in part."

In respect of tax payments the intervention alleged: "Said deed of trust contains adequate provisions authorizing the [bank] to protect its interest as to all taxes and assessments constituting a charge against said land which [Person] should fail to pay, by making payment of same. As a result [of] the default of [Person] to pay the taxes and assessments, the [bank] as alleged

___

[6] The district executed its quitclaim deed to Texarkana National Bank in consideration of a payment of $1,181.94, covering delinquent taxes for 1930, 1931, 1932, 1933, and 1934. *Prima facie* the transaction was a sale as distinguished from a redemption.

by [the levee district] . . . purchased the land,
. . . and now holds a deed to same." ·

Finally, the bank interposed its claim to any damages that might accrue by reason of Person's suit, proceeds to be applied on the judgment debt.

In a motion to dismiss Person's complaint, filed July 28, 1938, the district averred that construction of the levee complained of was begun in December, 1935, and that it was completed early in January, 1936.[7]

In an order of May 27, 1940, sustaining the district's demurrer, the chancellor held that the lands were not redeemed from the district within the time allowed by law, and that the district's deed of March 28, 1936, to the bank, vested title.

In a pleading styled "Petition for Rehearing," filed in chancery court June 27, 1940, Person reviewed the various proceedings, and said: "Plaintiff's period for redemption must now be computed from the date of the sale held under cause No. 3855—September 8, 1934. Records of the levee district will show that the right of way was taken before one year had expired after September 8, 1934. . . . If allowed to amend his complaint, plaintiff will state that the taking of said lands occurred on or about August 1, 1935."[8]

It is urged that, in respect of the district's liens in cause No. 3855, erroneous descriptions avoid the decree. The descriptions were: L. K. Person, plat B. all S¾ lying east L, section 12, 183.38 acres; plat B. frl. N½ lying east of drainage ditch, section 13, 149.30 acres, both in township fifteen south, range twenty-six west. Argument is that abbreviations "not known or understood" were used.

Were the descriptions so indefinite as to render the decree void on its face? It was contended by Person

[7] In an "amended and substituted complaint," filed June 21, 1937, Person alleged that ". . . said loop levee construction was begun in or about the year 1935, and was completed in or about January, 1936."

[8] March 27, 1939, the bank sold certain lands to Person, including those alleged to have been taken and those thought to have been damaged. The consideration was $12,500, of which $4,000 was paid in cash and the balance evidenced by six notes.

that "no maps are on file with the county clerk"; hence, the reference to plat B was improper.

The decree recites that the defendants (including Person) were "duly and legally summoned in accordance with law," and that they failed to appear. There was personal service.[9]

That part of the complaint which seeks to avoid the decree is a collateral attack, and unless the error complained of appears on the face of the record it is unavailing. Allegation that no map of the district showing plat B was on file is not sufficient. The decree shows that evidence was heard, and maps may have been identified. It is, of course, improbable that this occurred; but on collateral attack, absolute verity must be accorded judgments and decrees unless the want of jurisdiction of the subject-matter or the person is shown, or unless the exhibit identified in the judgment or decree (where land descriptions are involved) is so palpably unsubstantial as to be meaningless for purposes of identification.

Assuming (without deciding) that Person, if he continued to own the property, had two years from September 8, 1934, within which to redeem, the fact is that prior to November 5, 1937, an agreement or "compromise" with the bank is shown by which Person withdrew his objections to sale and confirmation under the trust deed. It is not in evidence that a division of moneys sought to compensate so-called damages featured in the negotiations, for Person's proposal was not made until January 7, 1938, and prior to that time the rights of the parties had been fixed.

The result is that before November 5, 1937, the bank settled its controversy with Person as to the right to foreclose. It asserted purchase from the district, and insisted that any payments to compensate damages should

---

[9] An excerpt from the decree is: "The plaintiff introduced the delinquent tax list furnished by the chancery clerk of Miller county, Arkansas, from the list of delinquent lands in Miller Levee District No. 2, returned by the collector of Miller county and now recorded in the chancery clerk's office showing the taxes to be due by the respective defendants for the year 1931 as hereinafter set forth, and from the testimony introduced, the complaint of the plaintiff, and the delinquent list returned by the collector, . . . and other evidence, the court finds . . ."

be made to it. There was no suggestion that appellant should receive 25 per cent. of the recovery.

The bank had a right to redeem from the district for the benefit of the mortgagor. Instead of redeeming, it purchased. But a purchase will be treated as a redemption unless, as in the instant case, it is clearly shown that the parties had agreed to a settlement involving acquisition of the mortgaged property by the mortgagee. In the case at bar the bank consummated its arrangements with Person and its purchase or redemption from the district was after the injuries complained of had been inflicted, and it is estopped to demand benefits. Person delayed more than two years after the tax sale of 1934 before moving to avoid it. That he did not (when the complaint was filed December 24, 1936) intend to redeem is shown by his failure to tender the amount due; nor did he then have in mind that the bank's purchase was a redemption for his benefit. His attack was directed to the tax sale of May 31, 1932. In an amended and substituted complaint of June 21, 1937, Person claimed to be owner of "the equitable right of redemption." He was still attacking the sale of 1932, and did not allege that the bank had redeemed for him, nor did he offer to redeem.

Although not of importance in view of our decision here, attention is called to Person's contention that the district's tax sales were void because title was in the state. In *Miller* v. *Watkins*, 194 Ark. 863, 110 S. W. 2d 531, 111 S. W. 2d 466, 113 A. L. R. 913, it was said on rehearing that the right of an improvement district to foreclose its betterment liens is suspended ". . . where lands or town lots have been sold to the state," and "this suspension is not dependent upon the validity or invalidity of the sale to the state. The right is suspended in either case, as the state cannot be divested of its paramount lien for its taxes, . . ."

In *The Lincoln National Life Insurance Company* v. *Wilson, Receiver*, 199 Ark. 732, 135 S. W. 2d 846, act 329 [10] was held to "validate" improvement district fore-

---

[10] Approved March 15, 1939.

closures where at the time title was in the state by virtue of a valid sale, or apparently in the state through a voidable sale. The Wilson Case is not in conflict with *Davidson* v. *Crockett*, 200 Ark. 488, 140 S. W. 2d 695. A headnote is: ''While act No. 329 of 1939 is both retroactive and curative in its provisions, it has no application to a decree which had become final before the act became a law.'' By reference to page 494 of the Arkansas Reports, p. 697 of 140 S. W. 2d, it will be seen that the decree referred to held that the foreclosure of liens was invalid. From this decree there was no appeal. The Crockett Case is authority for the proposition that where a sale had been adjudged invalid and the decree was not appealed from, act 329 did not overturn such adjudication made prior to its passage. In the instant case the sale was valid.

Affirmed.