HIGGINBOTHAM *v.* HARPER.

4-7120                                                                         174 S. W. 2d 668

Opinion delivered October 18, 1943.

*W. P. Smith* and *W. E. Beloate,* for appellant.

*S. L. Richardson* and *W. J. Schoonover,* for appellee.

McHANEY, J. On September 3, 1912, W. W. Harper, being the owner in fee of the 40 acres of land here involved, in Randolph county, conveyed same by warranty deed to his wife, Dollie B. Harper for her life, and the remainder to his two sons, appellee, Clarence S. Harper, and Clyde Harper. Thereafter, through *mesne* conveyances, the life estate of Dollie B. Harper who is still living passed to appellant in 1922 and he has resided thereon and has farmed it since that time. Clyde Harper conveyed his interest therein to appellee.

The land is included in a drainage district which was created in 1927, in which there were assessed benefits, payable annually over a period of 20 years. Appellant paid the annual tax on benefits up to and including 1931, but has paid nothing thereon since 1931. The district became insolvent, a federal receiver was appointed and a foreclosure decree was had in the district court, enforcing the district's lien for taxes on this and other lands in 1938. At the sale, the receiver became the purchaser. Appellant continued in possession until after the decree here appealed from. This land forfeited in 1933 for the general taxes of 1932 and was sold to the State. In 1937, appellant's son purchased from the State at the instance of his father, and three months thereafter conveyed same to his father. There was another forfeiture to the State and a conveyance from the State to parties who thereafter conveyed to appellee, but it is conceded that this forfeiture has no bearing on this case.

In July, 1941, appellee purchased the land from the drainage district paying $238, and received a deed from the receiver thereto, the period of redemption having expired. Thereafter, in October, 1941, appellee brought this action against appellant, setting up the above facts, and praying that the life estate be declared forfeited because of appellant's failure to pay the tax on betterments in said district, and that he have an accounting for the rents and profits, and possession of the land.

Appellant demurred to the complaint on the ground that the court had no jurisdiction and that appellee's action was one at law for ejectment. For the purpose of this opinion we assume that the court overruled this demurrer, although the parties are in dispute as to whether it was ever presented to the court. Appellant answered with a general denial, and set up as a defense the forfeiture to the State for the 1933 taxes, the sale from the State to appellant's son on February 23, 1937, and the sale by said son to him on May 17, 1937. Other defenses were set up some of which will be hereinafter discussed.

Trial resulted in a decree that appellee is the fee simple owner of said land, is entitled to the immediate possession thereof, and rendered judgment against appellant for the rents for 1941 and 1942.

For a reversal appellant first says the court had no jurisdiction—that it is purely an action in ejectment at law. In this, appellant is in error, as the suit sought the declaration of a forfeiture and a cancellation of the life estate because of the failure to pay drainage district taxes, permitting same to be sold therefor and a failure to redeem therefrom within the time provided by law. Also it sought an accounting for the rents and profits accruing to appellant from said land, after the redemption period had expired, or from the date of appellee's purchase from the district. We conceive these to be grounds of equity jurisdiction. As said by Judge BATTLE in *Cherokee Construction Co.* v. *Bishop,* 86 Ark. 489, 112 S. W. 189, 126 Am. St. Rep. 1098: "As a rule, equity will not enforce a forfeiture. But there are exceptions to this

rule. In cases where the forfeiture works equity and protects the rights of parties, equity will in effect enforce it. Courts of equity will not reject it when it becomes a means of enforcing equitable rights.''

Here the duty rested upon appellant, the life tenant, to pay all general taxes, § 13813, Pope's Digest, and all special assessments, *Crowell* v. *Seelbinder,* 185 Ark. 769, 49 S. W. 2d 389, 83 A. L. R. 788, to protect his own interest and that of the remainderman. His failure to pay the drainage district tax on betterments resulted in a sale to the district. His failure to redeem from such sale within the time provided resulted in an extinguishment of his title as well as that of appellee in remainder, assuming a valid sale, and forced appellee to purchase from the district to protect his remainder interest. To declare the forfeiture in this case here worked equity, protected the rights of appellee, and did no harm to appellant as he had already lost title by failing to redeem, and it became a means of enforcing appellee's equitable rights.

But assuming that appellee had a complete and adequate remedy at law and should have proceeded there, his failure to do so was not ground for dismissing the complaint as prayed in the demurrer. Section 1243, Pope's Digest. There was no motion to transfer to law, and the error, if error as to forum, was waived. *Sledge-Norfleet Co.* v. *Matkins,* 154 Ark. 509, 243 S. W. 289, and cases there cited.

Another contention is that, if a right of forfeiture of the life estate did occur, only W. W. Harper could enforce it during the lifetime of Dollie B. Harper. This claim is based on the language of his deed to his wife and sons, which recites the conveyance to Dollie B. Harper, ''for and during her natural life and then in fee simple forever to Clarence S. Harper and Clyde Harper —and unto their heirs and assigns forever.'' Like language was used in the habendum clause. Then follows a provision that, if Dollie B. dies during the minority of Clarence S. and Clyde, he could collect the rents during their minority and account to them therefor. It is argued that there is no present grant of the fee, subject to the

life estate, and that it remained in the grantor until the death of Dollie B. We cannot agree. We think the deed, considered as a whole, shows that the whole title was conveyed, and that the fee in remainder vested in Clarence S. and Clyde. The conditional provision above mentioned confirms this view. Upon a termination of the life estate for any legal reason title would pass to the remaindermen and their grantees and would not revest in the grantor.

Another contention is that, by reason of the forfeiture and sale to the State for the general taxes in 1933, and the purchase from the State in February, 1937, by Arthur Higginbotham, appellant's son, and the purchase by him from his son in May following, the life estate was terminated and he became the fee owner. But not so. It was appellant's duty as life tenant to pay the taxes, and it is well settled that a life tenant cannot permit a sale of land for taxes and thus acquire the interest of the remaindermen. Such purchases will be regarded as redemptions. *Galloway* v. *Battaglia,* 133 Ark. 441, 202 S. W. 836, citing *Inman* v. *Quirey,* 128 Ark. 605, 194 S. W. 858. See, also, *Wells* v. *Henry,* 184 Ark. 1114, 45 S. W. 2d. 20.

It is also argued that the sale under the foreclosure decree was void because at the time title was in the State. Section 2 of Act 329 of 1939 validated such sales. *Davidson* v. *Crockett,* 200 Ark. 488, 140 S. W. 2d 695; *Person* v. *Miller Levee District,* 202 Ark. 173, 150 S. W. 2d 950, citing *Lincoln Nat'l L. Ins. Co.* v. *Wilson, Receiver,* 199 Ark. 732, 135 S. W. 2d 836.

Another contention is a collateral attack on the foreclosure decree of the drainage district's lien for taxes on certain grounds, which we have examined and find without substantial merit.

Affirmed.

McFADDIN, J., (dissenting). It is true that the duty rested upon the appellant, as life tenant, to pay all general taxes and all special assessments to protect his own interest and that of the remaindermen under § 13813 of

Pope's Digest and *Crowell* v. *Seelbinder,* 185 Ark. 769, 49 S. W. 2d 389, 83 A. L. R. 789 (where there is an annotation on p. 793). But the majority opinion holds: (1) that a life tenant's estate may be forfeited for failure to pay improvement district assessments; and (2) that the remainderman is entitled to collect rents before taking possession. I dissent from both of these holdings.

1. *Forfeiture of the Life Estate for Failure to Pay Improvement Assessments.* Our statute, (§ 13813, Pope's Digest) in providing for forfeiture of a life estate for failure to pay taxes, does not provide for forfeiture for failure to pay improvement district assessments; and *Crowell* v. *Seelbinder* does not hold that an improvement district assessment is a tax. The majority opinion thus writes into the statute words which the legislature did not put there; and the general rule is that a life estate will not be forfeited for failure to pay special assessments in the absence of a statute so providing. In 21 C. J. 971 and in 31 C. J. S., Estates, § 65, p. 81, the rule is stated: "A statute providing for the forfeiture of a life estate for permitting a sale for nonpayment of taxes by the life tenant does not apply to a sale for the nonpayment of a special assessment for a local improvement."

In *Anderson* v. *Messenger,* 158 F. 250, the United States Circuit Court of Appeals of the Sixth Circuit had before it an Ohio statute like our § 13813 of Pope's Digest, and the court there held that the distinction between general taxes and special assessments is universally recognized, and that no forfeiture of a life estate occurred for failure to pay a special assessment of a local improvement district in the absence of a statute so providing. Forfeitures of a life estate are not favored. In 31 C. J. S., Estates, § 65, pp. 80-81, there are discussed some of the various acts that were forfeitures at common law, and the reluctance of equity to enforce these forfeitures in the absence of statutes so declaring.

The holding against a forfeiture does not leave the remainderman without relief. The remainderman may discharge the incumbrance and pursue the interest in the life tenant; in other words, in this case, the remainder-

216

man could have a lien declared on the interest of the life tenant for the amount of the special assessment discharged by the remainderman, and the lien on the interest of the life tenant could be foreclosed as any other lien. That is the procedure that I think should be followed in such cases rather than the forfeiture as upheld by the majority in this case.

2. *Rent Before Possession.* The majority opinion has affirmed a decree of the Chancery Court which allowed the remainderman to recover personal judgment against the life tenant for rents in 1941 and 1942 prior to the decree of the Chancery Court adjudging the life estate to be terminated. In 31 C. J. S., Estates, § 65, p. 80, the rule is stated: "A forfeiture incurred by a life tenant may be waived by the person entitled to enforce it. The reversioner's right to enforce a forfeiture is merely an inchoate right until decreed by a court of competent jurisdiction." Even if the remainderman had a cause of action, as held by the majority, to forfeit the life estate for failure to pay the special assessment for local improvements, still that was a cause of action that the remainderman could waive; and until the forfeiture was decreed by a court of competent jurisdiction, the remainderman would not be entitled to possession, and certainly should not recover rents accruing prior to the decree for possession.

For these reasons, I respectfully dissent from the majority holding herein.